1  **SAMPSON & ASSOCIATES**
   Bryan D. Sampson (#143143)
2  Elizabeth Aronson (#167869)
   2139 First Avenue
3  San Diego, California 92101
   (619)557-9420 / Fax (619)557-9425
4
   Attorneys for SECURED CREDITOR
5  BRADLEY PROULX

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

FILED DJ

01 NOV 19 PM 5: 05

CLERK
U.S. BANKRUPTCY CT.
SO. DIST. OF CALIF.

| | |
|---|---|
| In re:<br><br>SARA NEWSOME BURNS,<br><br>                   Debtor. | Case No.  99-33191-B7<br><br>Adv. No:  01-90355-B7<br><br>Chapter 7 |
| RICHARD KIPPERMAN, Trustee,<br><br>                 Plaintiff,<br><br>v.<br><br>BRADLEY PROULX, an individual,<br><br>                Defendant. | **DECLARATION OF BRYAN D. SAMPSON IN SUPPORT OF CREDITOR BRADLEY PROULX' S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  December 17, 2001<br>Time:  2:30 p.m.<br>Ctrm:  4<br>Judge:  Hon. Peter W. Bowie |

I, Bryan D. Sampson, declare:

1.    I am an attorney licensed to practice law in the State of California and before this Court. I am also the attorney of record for creditor Bradley Proulx in this action and in the underlying matters.

2.    If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

**Creditor's Exhibits**

3.    Attached hereto as Exhibit "1" is a true and correct copy of the State Court Judgment against Debtor BURNS dated October 30, 1998.

4.    Attached hereto as Exhibit "2" is a true and correct copy of the dismissal of Debtor's appeal of the state court action dated October 2001..

1

DECLARATION OF BRYAN D. SAMPSON IN SUPPORT OF CREDITOR BRADLEY PROULX'S MOTION FOR SUMMARY JUDGMENT

S:\Company Files\Clients - Open\Proulx\pldg\BANKRUPTCY\Chapter 7\SJM\BDS.wpd

*(left margin, vertical)* SAMPSON & ASSOCIATES  ATTORNEYS AT LAW  2139 FIRST AVENUE  SAN DIEGO, CALIFORNIA 92101  TELEPHONE (619)557-9420 • FACSIMILE (619)557-9425

5.     Attached hereto as Exhibit "3" is a true and correct copy of Creditor's Abstract of Judgment dated November 6, 1998.

6.     Attached hereto as Exhibit "4" is a true and correct copy of the state court turnover order dated December 16, 1998.

7.     Attached hereto as Exhibit "5" is a true and correct copy of the lien on the federal *Qui Tam* action dated January 13, 1999.

8.     Attached hereto as Exhibit "6" is a true and correct copy of the Order to Appear for Examination dated November 10, 1998, the proof of service and excerpts from the examination.

9.     Attached hereto as Exhibit "7" is a true and correct copy of the proposed Order on Summary Judgment.

**Factual Discussion**

10.    **The State Court Judgment**. On October 30, 1998, Creditor Proulx was awarded judgment against Debtor Burns in the amount of $193,333.33 plus $22,267.50 together with interest thereon from July 29, 1991 at the rate of 10% per annum.

11.    The judgment expressly grants Creditor a portion of Debtor's *Qui Tam* settlement with the United States Government.

12.    Debtor appealed the State Court judgment. The California Court of Appeals, Fourth Appellate District dismissed the appeal and awarded costs to Creditor on October 16, 2001.

13.    **Creditor Proulx's State Court Liens**. Creditor PROULX has also secured his judgment against Debtor Burns in the State Court action. I assisted in recording an Abstract of Judgment against Debtor Burns' real property on November 6, 1998.

14.    I assisted in obtaining a "levy lien" on the Qui Tam monies with a Turnover Order on December 16, 1998.

15.    I assisted Creditor Proulx in obtaining a *blanket lien* on all of Debtor Burns' assets when he obtained an Order to Appear for Examination which was served on Debtor Burns on November 10, 1998.

16.    The foregoing liens were all filed and perfected more than 90 days prior to the date of Debtor's filing the instant Chapter 7 petition, which action I am informed and believe and thereon allege was filed on August 11, 1999.

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 557-9420 • FACSIMILE (619) 557-9425

2

DECLARATION OF BRYAN D. SAMPSON IN SUPPORT OF CREDITOR BRADLEY PROULX'S MOTION FOR SUMMARY JUDGMENT

17. **Creditor Proulx's Federal Court Lien**. On January 13, 1999, I assisted Creditor Proulx in recording a lien on Debtor Burns' federal Qui Tam action, as well as any proceeds from the action. This liens was also filed and perfected more than 90 days prior to Debtor's Chapter 7 petition on August 11, 1999.

18. **Procedural Overview**. Despite the State Court orders and liens, Debtor Burns refused to pay any monies to Creditor. I attempted on several occasions to meet and confer with her counsel, to no avail.

19. Based upon the foregoing, a contempt action against Debtor Burns was pending when she filed her first bankruptcy action, which bankruptcy action was subsequently dismissed.

20. As of today, Debtor Burns has refused to discuss any settlement whatsoever. Instead, she has informed me that this is an "all or nothing" dispute.

21. During post-judgment discovery and her Debtor's examination, she acquired a sudden onset of amnesia which prevented her from remembering where any of her assets were located.

22. In my investigation of Debtor's assets, I discovered that Debtor Burns had attempted to accelerate the final payment from the United States Government, which was scheduled to be paid in July 1999, to late December 1998 in an attempt to avoid compliance with the State Court order.

23. On January 25, 1999, Debtor filed Chapter 13 Case No. 99-00811-B13. The Chapter 13 was dismissed on or about July 22, 1999. Thereafter, on or about December 26, 2000, the 9th Circuit Bankruptcy Appellate Panel reversed the dismissal and remanded the Chapter 13 Case for further proceedings consistent with its opinion. However, the Debtor has as of now voluntarily dismissed the Chapter 13 action.

24. In the case at hand I do not believe that there are any triable issues of material fact as the subject dispute revolves solely around the legal issue of whether Creditor Proulx's liens perfected on Debtor Burns' assets, and ahead of Plaintiff's *hypothetical creditor lien*, prior to 90 days before the filing of the instant action on August 11, 1999, i.e. on or before May 12, 1999.

25. The underlying State Court judgment was entered on October 30, 1998, and is valid for ten years, i.e. to October 30, 2008. See C.C.P. §683.020; and Exhibit "1." Further, the amount of the judgment exceeds $249,534.46, which includes the principal judgment and 10% interest. To date, none of the judgment has been paid to Creditor Proulx.

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 · FACSIMILE (619)557-9425

3

DECLARATION OF BRYAN D. SAMPSON IN SUPPORT OF CREDITOR BRADLEY PROULX'S MOTION FOR SUMMARY JUDGMENT

S:\Company Files\Clients - Open\Proulx\pldg\BANKRUPTCY\Chapter 7\SJ\MBDS.wpd

26.    Creditor PROULX applied to the court and obtained a turnover order in aid of execution directing Debtor BURNS and/or any applicable third party to turn over all checks or funds received, which represented payment to Debtor BURNS in the *Qui Tam* settlement with the United States Government, to the Marshal of San Diego County. This order was issued by the court on December 16, 1998, which is clearly outside of the 90-day preference period of the instant Chapter 7 action. Debtor ignored the order.

27.    Based upon my investigation, Debtor Burns has already taken over $400,000 from prior Qui Tam payments, none of which were accounted for to the State Court or me by Debtor, or paid to Creditor, as required by the State court order.

28.    Creditor has priority liens over Plaintiff in this action, which lien amounts are fully perfected and which exceed the current balance of *Qui Tam* proceeds by nearly $100,000.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed this 17th day of November, 2001, in San Diego California.

Bryan D. Sampson

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
119 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 · FACSIMILE (619)557-9425

DECLARATION OF BRYAN D. SAMPSON IN SUPPORT OF CREDITOR BRADLEY PROULX'S MOTION FOR SUMMARY JUDGMENT

S:\Company Files\Clients - Open\Proulx\pldg\BANKRUPTCY\Chapter 7\SJM\BDS.wpd

EXHIBIT "1"

F  I  L  E  D
KENNETH E. MARTONE
Clerk of the Superior Court

OCT 3 0 1998
MC &p

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | | |
|---|---|---|
| BRADLEY PROULX, | ) | CASE NO.   711064 |
| | ) | |
| Plaintiff, | ) | JUDGMENT |
| | ) | The foregoing instrument is a full, true and correct |
| v. | ) | copy of the original on file in this office. |
| | ) | Attest: **JAN 13 1999** |
| SARA NEWSOME BURNS, | ) | KENNETH E. MARTONE |
| | ) | Clerk of the Superior Court of the State of California, |
| Defendant. | ) | in and for the County of San Diego, |
| | ) | |

By _____ Deputy

This cause came on for hearing on June 15, 1998, in
Department M-25 of the above-entitled court, the Honorable
Timothy W. Tower, Judge, presiding.  Plaintiff appeared by his
attorney T. Michael Reed, and defendant appeared by her
attorneys David Tiffany and Randy Grossman.

Jury was waived.  Witnesses on the part of both plaintiffs
and defendants were sworn and examined.  After hearing the
evidence and the arguments of counsel, the court subsequently
rendered a Statement of Decision as follows:  See Statement of
Decision attached as Exhibit 1.

WHEREFORE, by virtue of law, and by reason of the premises
aforesaid, it is ordered, adjudged, and decreed that plaintiff

1   BRADLEY PROULX has and recovers from defendant the sums as

2   follows:

3       One-third of $580,000.00 or $193,333.33 to be paid pro rata

4   as the government pays defendant, plus $22,267.50 together with

5   interest thereon from July 29, 1991 to the present at the rate

6   of 10% per annum, without compounding, in the amount of

7   $15,861.78.

8       Interest, costs and disbursements are to be determined.

9       WITNESS, the Honorable Timothy W. Tower, Judge of this

10  Court, and my hand and seal of this Court, this ___30TH___ day of

11  ~~September~~ *October*, 1998.

13

14  _____
    HONORABLE TIMOTHY W. TOWER
15  Sitting as Judge of the Superior
    Court

16

17  Approved as to form:

18

19  _____

20  Attorneys for Defendant

21

22

23

24

25

26

27

28

proulx\Judgment                                          Page 2

EXHIBIT "2"

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRADLEY L. PROULX,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SARA NEWSOME BURNS,<br><br>    Defendant and Appellant. | D032538<br><br>FILED<br>Stephen M. Kelly, Clerk<br><br>OCT 1 6 2001<br><br>Court of Appeal Fourth District<br><br>(Super. Ct. No. 711064) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy W. Tower, Judge.  Appeal dismissed; petition denied.

SUMMARY

Plaintiff and respondent Bradley L. Proulx helped defendant and appellant Sara Newsome Burns prosecute a federal False Claims Act (qui tam) action (31 U.S.C.A. § 3730 (b)) against Burns's former employer.  Proulx provided the assistance in exchange for Burns's agreement that she would pay him hourly for his investigative services plus one-third of any amount she recovered in the action.  Burns's qui tam action was successful and Burns recovered $580,000.  However, Burns refused to pay Proulx any portion of the amount she recovered.

Proulx sued Burns and following a court trial, the trial court awarded Proulx $215,600 plus interest. Burns filed a timely notice of appeal from the trial court's judgment. However, because Burns's motion to vacate the trial court's judgment was still pending at the time her notice of appeal was filed and Burns desired a ruling from the trial court on her motion, she filed in the trial court an abandonment of her appeal. The abandonment did not state whether it was with or without prejudice. After the trial court denied Burns's motion to vacate, she filed a second notice of appeal.

Proulx moved to dismiss Burns's appeal, arguing that her abandonment of her first notice of appeal was with prejudice and acted as an affirmance of the trial court's judgment. In response to Proulx's motion we directed the parties to brief us as to whether we had the power to alter nunc pro tunc Proulx's abandonment and to brief us as well on the merits of Burns's appeal. On the merits Burns argues the trial court had no subject matter jurisdiction over Proulx's breach of contract claim, that Proulx's claims were barred by the statute of limitations and that the parties had mutually abandoned their agreement.

We grant Proulx's motion to dismiss. Burns's abandonment of her first appeal deprived this court of appellate jurisdiction, and her second notice of appeal did not reinstate our appellate jurisdiction. Rather, Burns was required to seek relief from her abandonment from the trial court.

However, because the case has been fully briefed on the merits and any further delay in proceedings would substantially prejudice the parties, we will treat Burns's

2

appeal as a petition for a writ of mandamus. For the reasons set forth below we deny the petition.

## DISCUSSION

### I

The trial court filed its statement of decision in which it found in favor of Proulx on September 21, 1998. On October 13, 1998, Burns filed a notice of motion to set aside the trial court's judgment. The notice indicated that Burns's motion would be heard on December 8, 1998.

On October 30, 1998, the trial court's judgment was in fact entered. Although her motion to vacate the judgment had not yet been heard, on November 3, 1998, Burns filed a notice of appeal from the judgment.

In his opposition to the motion to vacate, Proulx argued that in light of the notice of appeal the trial court had no jurisdiction to hear Burns's motion. Proulx's opposition was filed on November 13, 1998. On November 16, 1998, Burns filed an abandonment of her appeal. The abandonment did not state whether it was with or without prejudice to a further appeal. Very shortly thereafter Burns filed a reply memorandum in support of her motion to vacate and relied upon her abandonment in arguing that the trial court had jurisdiction to rule on her motion.

The trial court denied Burns's motion and Burns filed a second notice of appeal on December 11, 1998. The second notice of appeal states that it is from the October 30, 1998, judgment.

3

Relying on rule 19(a) of the California Rules of Court[1] and Code of Civil

Procedure[2] section 913, Proulx moved to dismiss Burns's appeal.  In opposition to the

motion, Burns submitted the declaration of her attorney which states that the

abandonment of the first appeal was filed only so that the trial court could rule on the

motion to vacate and that Burns had no intention of foregoing her right to seek review on

the merits of the trial court's ruling.

Rule 19(a) provides in part:  "At any time before the filing of the record in the

reviewing court, the appellant may file in the office of the clerk of the superior court a

written abandonment of the appeal; or the parties may file in that office a stipulation for

abandonment.  The filing of either document shall operate to dismiss the appeal and to

restore the jurisdiction of the superior court."  Section 913 states:  "The dismissal of an

appeal shall be with prejudice to the right to file another appeal within the time permitted,

unless the dismissal is expressly made without prejudice to another appeal."

In *Conservatorship of Oliver* (1961) 192 Cal.App.2d 832, 836-837, the court

considered rule 19 and the predecessor to section 913.  As here,  in *Conservatorship of

Oliver,* the appellant filed an abandonment in the trial court before any record on appeal

had been filed with the Court of Appeal, and the abandonment did not indicate whether it

---

1    All further rule references are to the California Rules of Court unless otherwise
indicated.
2    All further statutory references are to Code of Civil Procedure unless otherwise
indicated.

4

was with or without prejudice. In dismissing Oliver's later appeal, the court stated: "In the instant case, there was no record on appeal in this court at the time of the filing of the abandonment of appeal in the superior court. Although it has not been definitely decided in this state, we conclude that the filing of the abandonment of the appeal operated as a dismissal of it. [Citations.] The dismissal is, in effect, an affirmance of the judgment. [Citations.] Furthermore, in the instant case, the dismissal or abandonment was not expressly made without prejudice.

"The rule appears to be that before filing the subsequent appeals by Oliver, . . . it was necessary for him to first make an application in the superior court to set aside the abandonment where the abandonment was not expressly made without prejudice. . . . .

"We therefore conclude that since Oliver made no application to the superior court to be relieved of the effect of the written abandonment of his appeal before attempting to again appeal, the [later] attempted appeals . . . from the same judgments and orders . . . were ineffectual as to the judgments and orders." (*Conservatorhip of Oliver, supra*, 192 Cal.App.2d at pp. 836-837.)

Because like the appellant in *Conservatorship of Oliver*, Burns's abandonment was filed before any record on appeal had been filed with this court, the abandonment did not state that it was without prejudice and Burns has made no attempt to obtain relief from her abandonment of appeal from the trial court, her later notice of appeal from the trial

5

court's judgment did not provide us with appellate jurisdiction. Thus we must dismiss her appeal. (*Conservatorship of Oliver, supra,* 192 Cal.App.2d at p. 837.)[3]

Although we are always cautious in doing so, in cases such as this, where the notice of appeal was filed within the time allowed for an appeal, the matter has been fully briefed on the merits and the effect of our dismissal for lack of appellate jurisdiction would be to create unnecessarily circuitous proceedings, we have the power to treat the appellant's notice of appeal and briefing on the merits as a petition for extraordinary relief. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 400-401; *Green v. GTE California, Inc.* (1994) 29 Cal.App.4th 407, 410.) Here, circuitous proceedings may well occur if we decline to treat Burns's appeal as a petition for extraordinary relief. The record shows in fairly convincing fashion that in abandoning her first appeal, Burns did not intend to forego her right to challenge the trial court's ruling but that her attorney simply erred in failing to expressly state that the abandonment was without prejudice. Where, as here, a dismissal is caused by an attorney's error, relief under section 473, subdivision (b), is mandatory. (See *Vaccaro v. Kaiman* (1998) 63 Cal.App.4th 761, 771; but see also *Conservatorship of Oliver, supra,* 192 Cal.App.2d at p. 837 [record shows that abandonment was intended to be with prejudice and application by appellant in trial court would be unsuccessful].) Thus the trial court might well be required to relieve Burns

---

3    Any appeal from the postjudgment order denying Burns's motion to vacate, which was entered after her abandonment was filed, would also be ineffective. The judgment having been in effect affirmed any appeal from the later order denying relief from the judgment would be moot. (*Conservatorship of Oliver, supra,* 192 Cal.App.2d at p. 837.)

6

from her abandonment and we would in any event be required to consider the merits of her appeal.[4]  Accordingly, in the interests of judicial economy and to avoid any unnecessary delay, we will instead treat Burns's appeal as a petition for a writ of mandate. (*Olson v. Cory, supra,* 35 Cal.3d at p. 401.)

<center>II</center>

In her principal argument Burns contends Proulx's contract claim should have been asserted in the federal False Claims Act proceeding she initiated against her employer.  Her argument is an admixture of subject matter jurisdiction and federal preemption.  We reject it.

First, Burns is mistaken in arguing federal courts have exclusive jurisdiction over qui tam actions.  Rather, the cases which have considered the issue have found that state courts have concurrent jurisdiction over qui tam claims.  (*United States ex rel. Paul v. Parsons, Brinkerhoff, Quade & Douglas, Inc.* (SD Tex. 1994) 860 F.Supp. 370, 374-375; *United States ex rel. Neil F. Hartigan v. Palumbo Bros., Inc.* (N.D. Ill. 1992) 797 F. Supp. 624, 632-633 (*Palumbo*).)  In particular, the court in *Palumbo* rejected the argument asserted by Burns that qui tam claims are civil penalties within the meaning of 28 United States Code section 1355 which provides for exclusive federal jurisdiction over claims for federal civil penalties.  (*Palumbo, supra,* 797 F.Supp. at pp. 632-633.)  The court reasoned that qui tam liability is restitutionary rather than punitive.  (*Ibid.*)

---

4    We express no opinion with respect to whether the six-month limitation period on relief under section 473, subdivision (b), was tolled while this case has been pending in this court.

<center>7</center>

More fundamentally, Burns is mistaken in arguing Proulx's claim against her, although related to her qui tam action, falls within the scope of the False Claims Act. Federal preemption is absent here because there is nothing express or implied in the False Claims Act which brings Proulx's contract action within the act and his claim does not conflict with any provision of the act. (See *English v. General Elec. Co.* (1990) 496 U.S. 72, 79 [110 S.Ct. 2270].)

Burns makes no attempt to find anything on the face of the False Claims Act which expressly preempts the operation of state law or expressly brings claims for expenses incurred by qui tam plaintiffs within the scope of the act. Although a federal statutory scheme may preempt state law even in the absence of an express statement doing so, such implied preemption only occurs when congress has demonstrated a "clear and manifest" intention to exclusively occupy a particular field and displace state law. (*English v. General Elec. Co., supra,* 496 U.S. at p. 79.) The only court which considered preemption under the False Claims Act has found no implied intent on the part of Congress to exclusively occupy the field of qui tam actions and entirely displace state law. (*Palladino v. VNA of Southern New Jersey* (D. N.J. 1999) 68 F.Supp.2d 455, 465-470.)

The fact the False Claims Act permits a *successful* qui tam plaintiff to recover his or her expenses from a defendant (31 U.S. Code § 3730 (d)(2)) does not by implication suggest that the act was intended to also cover disputes between a plaintiff and someone who provided services to the plaintiff. Indeed, any such an implication is largely undermined by 31 United States Code section 3730 (f) which states: "The Government is

8

not liable for expenses which a person incurs in bringing an action under this section." This substantive provision strongly suggests that in providing for qui tam actions, Congress determined that a plaintiff's potential liability for expenses was collateral to the goals of the False Claims Act and hence outside the scope of the act.

Finally, there is nothing in a judgment holding Burns liable for breach of contract which conflicts in any manner with any provision of the False Claims Act.  Holding a plaintiff liable to someone who has provided valuable services to the plaintiff will not prevent the plaintiff from recovering those expenses from the underlying defendant as provided by 31 United States Code section 3730 (d)(2) so long as the plaintiff makes a timely claim for those expenses in the qui tam action.  Here, Burns's inability to recover all or part of the amounts she owed Proulx from her employer was not caused by any conflict between state and federal law, but rather was the result of  Burns's attempt to entirely avoid paying Proulx what he was owed.

In sum, because there is no exclusive federal subject matter jurisdiction and no federal preemption, there is no basis upon which Proulx could be required to bring his contract claim in the underlying qui tam proceeding.

<div align="center">III</div>

Burns's remaining two arguments -- her contentions that Proulx's claim was barred by the statute of limitations and that in any event she and Proulx abandoned their agreement -- are defeated by her failure to present an adequate record on appeal.

As was her right, Burns elected to proceed on appeal without providing this court with a reporter's transcript of the trial.  (Rule 5 (f).)  However, in doing so she gave up

<div align="center">9</div>

the right to challenge the sufficiency of the evidence which supports the judgment. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154; 9 Witkin, Cal. Procedure (4th ed.) pp. 598-599, Appeal § 561.) "'It is elementary and fundamental that on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings, and that the only questions presented are as to the sufficiency of the pleadings and whether the findings support the judgment.'" (*Ehrler v. Ehrler, supra,* 126 Cal.App.3d at p. 154.)

Here, the trial court found that there was an agreement by which Burns promised to pay Proulx one-third of any amount she recovered from the qui tam action plus $22,267.50 in fees earned before their agreement was modified. The trial court found that Burns's liability was contingent upon her recovery of compensation in the qui tam action. Thus the trial court found that because Proulx brought his action within two years after Burns was paid in the qui tam action, it was timely under section 339, which provides a two-year limitation period for claims based breach of an oral contract. Because the rationale adopted by the trial court is on its face reasonable and fully supports the judgment, we have no power to reject it. (*Ehrler v. Ehrler, supra,* 126 Cal.App.3d at p. 154.)

The trial court also rejected Burns's contention that her agreement with Proulx was mutually abandoned. The trial court found that, as plaintiff testified, although Burns tried to "fire" Proulx, at most the original agreement was merely modified and as modified reduced the percentage Proulx would recover. Again, because these findings are on their

10

face reasonable and support the judgment, we have no further power to review them.

(*Ehrler v. Ehrler, supra*, 126 Cal.App.3d at p. 154.)

The appeal is dismissed; the petition for writ of mandamus is denied.  Respondent to recover his costs.

_____

BENKE, J.

WE CONCUR:

_____

KREMER, P. J.

_____

McDONALD, J.

11

EXHIBIT "3"

PLEASE COMPLETE THIS INFORMATION.

RECORDING REQUESTED BY:

T. Michael Reed Esq.
Casey, Gerry Reed & Schenk

AND WHEN RECORDED MAIL TO:
Casey Gerry Reed & Schenk
110 Laurel St.
San Diego, CA
92101

DOC # 1998-0725547

545    NOV 06, 1998 12:15 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:    13.50
NOTICES:    1

*THIS SPACE FOR R1*

1998-0725547

Abstract of Judgment

(Please fill in document title(s) on the this line)

**THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
(Additional recording fee applies)

Rc. Lenn #R25 (7/3/97)

546

982(a)(1)

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name ...dish)    TELEPHONE NO.    FOR RECORDER'S USE ONLY

[X] Recording requested by and return to:    (619)238-1811
T. Michael Reed, Esq.
CASEY, GERRY, REED & SCHENK
110 Laurel Street
San Diego, CA 92101

[X] ATTORNEY FOR  [X] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

NAME OF COURT: SUPERIOR COURT OF CALIFORNIA
STREET ADDRESS: County of San Diego, Central Branch
MAILING ADDRESS: 220 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME:

PLAINTIFF: BRADLEY PROULX

DEFENDANT: SARA NEWSOME BURNS, et al.

CASE NUMBER:

## ABSTRACT OF JUDGMENT

711064

FOR COURT USE ONLY

1. The [X] judgment creditor  [ ] assignee of record
applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      Name and last known address
      Sara Newsome Burns
      4621 Kensington Drive
      San Diego, CA 92116

   b. Driver's license No. and state:
   c. Social Security No.: 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            [X] Unknown
                                                   [ ] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to (name and address): SEE ABOVE--PER R. BOND
                                                   by AM

PER R. Bond
by AM

   e. [ ] Additional judgment debtors are shown on reverse.
Date: November 4, 1998

.T. .MICHAEL. REED
(TYPE OR PRINT NAME)                              ▶                         (SIGNATURE OF APPLICANT OR ATTORNEY)

2. a. [X] I certify that the following is a true and correct abstract     6. Total amount of judgment as entered or last renewed:
         of the judgment entered in this action.                             $ 231,462.61
   b. [ ] A certified copy of the judgment is attached.                    7. [ ] An [ ] execution [ ] attachment lien
3. Judgment creditor (name): Bradley Proulx                                   is endorsed on the judgment as follows:
                                                                              a. Amount: $
   whose address appears on this form above the court's name.                 b. In favor of (name and address):
4. Judgment debtor (full name as it appears in judgment):
   SARA NEWSOME BURNS

[REAL]                   5. a. Judgment entered on            8. A stay of enforcement has
                               (date): Oct. 30, 1998             a. [X] not been ordered by the court.
                            b. Renewal entered on               b. [ ] been ordered by the court effective until
                               (date):                                 (date):
                            c. Renewal entered on            9. [ ] This judgment is an installment judgment.
                               (date):
                         This abstract issued on            Clerk, by _____, Deputy
                         (date): NOV 0 6 1998                         LEE ANN McALISTER

Form Adopted by Rule 982                   ABSTRACT OF JUDGMENT                    Code of Civil Procedure, §§ 488.480,
Judicial Council of California                    (CIVIL)                                  674,700,190
982(a)(1) (Rev. January 1, 1994)

Exhibit "4"

F I L E D
KENNETH E. MARTONE
Clerk of the Superior Court

DEC 16 1998

By: M. RADEMAKER, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA.

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| BRADLEY PROULX, | CASE NO. 711064 |
| Plaintiff and Judgment Creditor, | TURNOVER ORDER IN AID OF EXECUTION |
| vs. | |
| SARA NEWSOME BURNS, and DOES 1 through 20, | |
| Defendants and Judgment Debtors. | |

Plaintiff/Judgment Creditor BRADLEY PROULX's motion for a turnover order in

aid of execution came for hearing before this Court on December 4, 1998 at 3:00 p.m. in

Department 46 of the above-entitled court, Honorable Ronald S. Prager presiding.  No

appearances were made by counsel as the motion was set for telephonic ruling.

The Court, having considered Plaintiff and Judgment Creditor's motion for a

Turnover Order in Aid of Execution, the written submissions of the parties, and the files and records of the case, and good cause having been shown therefore:

IT IS HEREBY ORDERED as follows:

1)    Upon receipt of, or upon receiving control or possession of the following described assets or any instrument representing or relating to those assets, the Defendant and Judgment Debtor, SARA NEWSOME BURNS, and/or any person acting in concert with her or under her direction or control, including her attorneys in the instant matter, DAN LAWTON, ESQ., and RANDY GROSSMAN, ESQ., and her attorney in *United States ex rel Newsome v. Family Practice Associates, et al.*, Civil Action No. 91-1325-E(P) (United States District Court for the Southern District of California), JOHN J. APPEL, JR., ESQ., shall immediately endorse and turn over, or cause to be turned over to the Marshal of San Diego County:

Any and all checks or funds received by SARA NEWSOME BURNS, DAN LAWTON, ESQ., RANDY GROSSMAN, ESQ., or JOHN J. APPEL, JR., ESQ., which represent payment to MS. BURNS of fees due to her for her participation as a relator in *United States ex rel Newsome v. Family Practice Associates, et al.*, Civil Action No. 91-1325-E(P) (United States District Court for the Southern District of California) and ordered paid to MS. BURNS pursuant to the Order on Stipulation for Order Modifying Settlement Agreement, dated July 1, 1997, in *U.S. ex rel Newsome v. Family Practice Associates, supra.*

2)    Neither the Defendant and Judgment Debtor, SARA NEWSOME BURNS, nor any person acting in concert with her or under her direction or control, including her

1   attorneys in the instant matter, DAN LAWTON, ESQ., and RANDY GROSSMAN, ESQ.,

2   and her attorney in *United States ex rel Newsome v. Family Practice Associates, et al.*, Civil

3   Action No. 91-1325-E(P) (United States District Court for the Southern District of

4   California), JOHN J. APPEL, JR., ESQ., shall receive, deposit, conceal, remove, or

5   sequester the above-described funds, nor shall they obstruct, delay, prevent, or interfere in

6   any manner with the timely delivery of the above-described funds to the Marshal of San

7   Diego County.

8

9

10          IT IS FURTHER ORDERED that this Order shall be personally served on the

11   judgment debtor, SARA NEWSOME BURNS, and her attorneys of record in the instant

12   matter, DAN LAWTON, ESQ., and RANDY GROSSMAN, ESQ., and her attorney in

13   *United States ex rel Newsome v. Family Practice Associates, et al., supra*, JOHN J. APPEL,

14   JR., ESQ.

15

16          NOTICE IS HEREBY GIVEN THAT FAILURE BY THE JUDGMENT

17   **DEBTOR, HER ABOVE-NAMED ATTORNEYS OF RECORD, OR ANY**

18   **PERSON ACTING ON HER BEHALF OR UNDER HER CONTROL, TO**

19   **COMPLY WITH THIS ORDER MAY SUBJECT SUCH PERSON TO**

20   **ARREST AND PUNISHMENT FOR CONTEMPT OF COURT.**

21

22

23

24   Dated: December __16__, 1998.

25   The foregoing instrument is a full, true and correct
     copy of the original on file in this office.

26   Attest:____ DEC 16 1998 _____

27   KENNETH E. MARTONE
     Clerk of the Superior Court of the State of California,
     in and for the County of San Diego.

28   By _Mary E. Anderson_ Deputy

Ronald S. Prager

HONORABLE RONALD S. PRAGER
Judge of the Superior Court

Page 3

EXHIBIT "5"

1  **SAMPSON & ASSOCIATES**
   Bryan D. Sampson (#143143)
2  2139 First Avenue
   San Diego, CA 92101
3  (619) 557-9420/Fax 557-9425

4  Attorneys for Lien Claimant BRADLEY PROULX

FILED

99 JAN 13 PM 2:08

BY:                          DEPUTY

8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11  UNITED STATES OF AMERICA ex rel SARA )    CASE NO. 91-1325-K(POR)
    NEWSOME (BURNS),                     )
12                                       )    **NOTICE OF LIEN**
              Plaintiffs,                )
13                                       )
                                         )
14  v.                                   )
                                         )
15  FAMILY PRACTICE ASSOCIATES, et al.   )
                                         )
16                                       )
              Defendants.                )
17
    ALL PARTIES IN THIS ACTION ARE NOTIFIED THAT:

    A lien is created by this Notice under FRCP 69 and Article 5 (commencing

    with section 708.410) of Chapter 6 of Title 9 of Part 2 of the California Code of Civil

    Procedure. The lien is based on a money judgment. The right to attach order or

    the money judgment is entered in the following action: Superior Court of California,

    San Diego Branch, Bradley Proulx v. Sara Newsome Burns, et al. Date of Entry of

    Judgment was October 30, 1998.

    The name and address of the judgment creditor or person who obtained the

    right to attach order are (specifically): Bradley Proulx, c/o Casey Gerry Reed &

    Schenk, 110 Laurel Street, San Diego, CA., 92101. The name and last known

    address of the judgment debtor or person whose property is subject to the right to

attach order are (specifically): Sara Newsome Burns, 4621 Kensington Drive, San Diego, 92116. The amount required to satisfy the judgment creditor's money judgment or to secure the amount to be secured by the attachment at the time this notice of lien is filed is $231,462.61.

The lien created by this notice attached to any cause of action of the person named in item 5 that is the subject of this action or proceeding and to that person's rights to money or property under any judgment subsequently procured in this action or proceeding.

No compromise, dismissal, settlement or satisfaction of this action or proceeding or any of the rights of the person named in item 5 to money or property under any judgment procured in this action or proceeding may be entered into by or on behalf of that person, and that person may not enforce any rights to money or property under any judgment procured in this action or proceeding by a writ or otherwise, unless one of the following requirements is satisfied:

a.    the prior approval by order of the court in this action or proceeding has been obtained;

b.    the written consent of the person named in item 4 has been obtained or that person has released the lien; or

c.    the money judgment of the person named in item 4 has been satisfied.

NOTICE: The person named in item 5 may claim an exemption for all or any portion of the money or property within 30 days after receiving notice of the creation of the lien. the Exemption is waived if it is not claimed in time.

DATED: 1-13-99

SAMPSON & ASSOCIATES

By: _____

Bryan D. Sampson
Attorneys for Lien Claimant

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*: | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

Bryan D. Sampson, Esq. (#1^    3)   (619) 557-9420
SAMPSON & ASSOCIATI..            fax (619) 557-9425
2139 First Avenue
San Diego, CA 92101

ATTORNEY FOR LIEN CLAIMANT: BRADLEY PROULX

NAME OF COURT: UNITED STATES DISTRICT COURT
STREET ADDRESS: 880 Front Street, Ste. 4290
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101-8900
BRANCH NAME: SOUTHERN DISTRICT OF CALIFORNIA

PLAINTIFF: United States of America ex rel Sara Newsome (Burns)

DEFENDANT: Family Practice Associates, et al.

| | |
|---|---|
| **NOTICE OF LIEN**<br>(Attachment - Enforcement of Judgment) | CASE NUMBER:<br>91-1325-K(POR) |

ALL PARTIES IN THIS ACTION ARE NOTIFIED THAT

1. A lien is created by this notice under
   a. ☐ Article 3 (commencing with section 491.410) of Chapter 11 of Title 6.5 of Part 2 of the Code of Civil Procedure.
   b. ☒ Article 5 (commencing with section 708.410) of Chapter 6 of Title 9 of Part 2 of the Code of Civil Procedure.
2. The lien is based on a
   a. ☐ right to attach order and an order permitting the creation of a lien (copies attached).
   b. ☒ money judgment.

3. The right to attach order or the money judgment is entered in the following action:
   a. Title of court *(specify)*:    SUPERIOR COURT OF CALIFORNIA, SAN DIEGO BRANCH
   b. Name of case *(specify)*:   BRADLEY PROULX v. SARA NEWSOME BURNS, et al.
   c. Number of case *(specify)*:   711064
   d. ☒ Date of entry of judgment *(specify)*:    October 30, 1998
   e. ☐ Dates of renewal of judgment *(specify)*:

4. The name and address of the judgment creditor or person who obtained the right to attach order are *(specify)*:
   BRADLEY PROULX, c/o Casey, Gerry, Reed & Schenk, 110 Laurel St., San Diego, CA 92101
5. The name and last known address of the judgment debtor or person whose property is subject to the right to attach order are *(specify)*:
   SARA NEWSOME BURNS, 4621 Kensington Drive, San Diego, CA 92116
6. The amount required to satisfy the judgment creditor's money judgment or to secure the amount to be secured by the attachment
   at the time this notice of lien is filed is
   $       231,462.61

7. The lien created by this notice attaches to any cause of action of the person named in item 5 that is the subject of this action or
   proceeding and to that person's rights to money or property under any judgment subsequently procured in this action or proceeding.
8. No compromise, dismissal, settlement, or satisfaction of this action or proceeding or any of the rights of the person named in item 5
   to money or property under any judgment procured in this action or proceeding may be entered into by or on behalf of that person,
   and that person may not enforce any rights to money or property under any judgment procured in this action or proceeding by a writ
   or otherwise, unless one of the following requirements is satisfied:
   a. the prior approval by order of the court in this action or proceeding has been obtained;
   b. the written consent of the person named in item 4 has been obtained or that person has released the lien; or
   c. the money judgment of the person named in item 4 has been satisfied.

> **NOTICE  The person named in item 5 may claim an exemption for all or any portion of the money or property
> within 30 days after receiving notice of the creation of the lien. The exemption is waived if it is not claimed
> in time.**

Date:  January 13, 1999

BRYAN D. SAMPSON, ESQ.
        (TYPE OR PRINT NAME)                                    ►              (SIGNATURE OF LIEN CLAIMANT OR ATTORNEY)

**NOTICE OF LIEN**
(Attachment - Enforcement of Judgment)   PROULX v. BURNS

CCP 491.410, 708.410

EXHIBIT "6"

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and)
T. Michael Reed
CASEY, GERRY, REED & SCHENK
110 Laurel Street
San Diego, CA 92101

TELEPHONE NO.: 619/238-1811

**COPY**

ATTORNEY FOR (Name): BRADLEY PROULX

NAME OF COURT: SUPERIOR COURT OF CALIFORNIA
STREET ADDRESS: COUNTY OF SAN DIEGO
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego, California 92101
BRANCH NAME: CENTRAL

**F I L E D**
KENNETH E. MARTONE
Clerk of the Superior Court

NOV 1 0 1998

By: M. RADEMAKER, Deputy

PLAINTIFF: BRADLEY PROULX,

DEFENDANT: SARA NEWSOME BURNS, et al.

| APPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION | CASE NUMBER: |
|---|---|
| XX ENFORCEMENT OF JUDGMENT ☐ ATTACHMENT (Third Person) | 711064 |
| XX Judgment Debtor ☐ Third Person | |

## ORDER TO APPEAR FOR EXAMINATION

1. TO (name): SARA NEWSOME BURNS
2. YOU ARE ORDERED TO APPEAR personally before this court, or before a referee appointed by the court, to
   a. XX furnish information to aid in enforcement of a money judgment against you.
   b. ☐ answer concerning property of the judgment debtor in your possession or control or concerning a debt you owe the judgment debtor.
   c. ☐ answer concerning property of the defendant in your possession or control or concerning a debt you owe the defendant that is subject to attachment.

Date: 11/20/98    Time: 8:30 a.m.    Dept. or Div.: 46    Rm.:
Address of court ☒ shown above ☐ is:

3. This order may be served by a sheriff, marshal, constable, registered process server, or the following specially appointed person (name):

Date: NOV 10 1998    ▶ [signature] Ronald S. Prager    (SIGNATURE OF JUDGE OR REFEREE)

**This order must be served not less than 10 days before the date set for the examination.**

# IMPORTANT NOTICES ON REVERSE

## APPLICATION FOR ORDER TO APPEAR FOR EXAMINATION

1. ☒ Judgment creditor ☐ Assignee of record ☐ Plaintiff who has a right to attach order
   applies for an order requiring (name): SARA NEWSOME BURNS    to appear and furnish information
   to aid in enforcement of the money judgment or to answer concerning property or debt.

2. The person to be examined is
   ☒ the judgment debtor
   ☐ a third person (1) who has possession or control of property belonging to the judgment debtor or the defendant or (2) who owes the judgment debtor or the defendant more than $250. An affidavit supporting this application under CCP § 491.110 or § 708.120 is attached.

3. The person to be examined resides or has a place of business in this county or within 150 miles of the place of examination.

4. ☐ This court is not the court in which the money judgment is entered or (attachment only) the court that issued the writ of attachment. An affidavit supporting an application under CCP § 491.150 or § 708.160 is attached.

5. ☐ The judgment debtor has been examined within the past 120 days. An affidavit showing good cause for another examination is attached.

declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: November 6, 1998

T. MICHAEL REED
(TYPE OR PRINT NAME)    ▶ [signature]    (SIGNATURE OF DECLARANT)

Form Approved by the
Judicial Council of California
AT-138, EJ-125 [New July 1, 1984]

**APPLICATION AND ORDER
FOR APPEARANCE AND EXAMINATION**
(Attachment—Enforcement of Judgment)

WEST GROUP
Official Publisher

CCP 491.110, 708.110, 708.120

**T. MICHAEL REED, BAR NO. 067240**
**CASEY, GERRY, CASEY, WESTBROOK, REED & SCHENK**
110 Laurel Street
San Diego, CA 92101
619/238-1811
Attorney for : Plaintiff

F I L E D
KENNETH E. MARTONE
Clerk of the Superior Court

NOV 1 2 1998

By: C. BANKS  Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

PLAINTIFFS: BRADLEY PROULX
DEFENDANT: SARA NEWSOME BURNS, et al.
CASE NO.: 711064

1.   At the time of service I was at least 18 years of age and not
     a party to this action, and I served copies of the:

     APPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION;
     ORDER TO APPEAR FOR EXAMINATION SARA BURNS and for
     JOHN G. APPEL, JR.; EX PARTE APPLICATION FOR ORDER FOR
     APPEARANCE AND EXAMINATION FOR ENFORCEMENT OF JUDGMENT
     OF JUDGMENT DEBTOR SARA NEWSOME BURNS AND THIRD PARTY
     JOHN G. APPEL, JR.; TURNOVER ORDER IN AID OF EXECUTION;
     SUBPENA DUCES TECUM (SARA BURNS and for JOHN G. APPEL
     JR.
     2.   a. (X) an attorney ( ) Party to the case: Sara Newsome
Burns
          b. Person Served:   (X) individual in item 2a () other
          c. Address:  4621 Kensington Dr.
          San Diego California

     d. Date and time of delivery: November 10 , 1998, at 1:20Pm
3.   I served the party names in item
     a.   (X) by personally delivering the copies
     b.   ( ) by leaving the copies at the attorney's office, in an
envelope or package clearly labeled to identify the attorney being
served.
          ( ) with a receptionist or, with a person having charge
thereof.
          ( ) in a conspicuous place in the office between the
hours of nine in the morning and five in the afternoon.
     c.   ( ) by leaving the copies at the individual's residence
with some person of not less than 18 years of age. (If service was
to a party and not an attorney, delivery was made between the hours
of eight in the morning and six in the evening).
4.   Person serving: PETER LEWIS MAZZORE.  Fee for Service:
                              d. Exempt from Registration
                                 pursuant to code
I declare under penalty of perjury under the laws of the State of
California that the foregoing is true and correct.

Date: November 10, 1998     _____
                            Signature
PROOF OF PERSONAL SERVICE (CCP 1011 & Local Rules Division II
                    Rule 6.7

| | |
|---|---|
| **EY OF PARTY W. THOUT ATTORNEY** *(Name and   ss)*:<br>Michael Reed<br>SFY, GERRY, REED & SCHL.<br>0 Laurel Street<br>n Diego, CA   92101 | **TELEPHONE NO.**:<br>619/238-1811<br><br>**FOR COURT USE ONLY** |

**RNEY FOR** *(Name)*: BRADLEY PROULX

| NAME OF COURT: SUPERIOR COURT OF CALIFORNIA | FILED |
|---|---|
| TREET ADDRESS: COUNTY OF SAN DIEGO<br>ILING ADDRESS: 330 W. Broadway<br>Y AND ZIP CODE: San Diego, California   92101<br>BRANCH NAME: CENTRAL | KENNETH E. MARTONE<br>Clerk of the Sup    urt<br><br>NOV 1 0 1998<br><br>By: M. KADEMARCH, Deputy |

**TIFF:** BRADLEY PROULX,

**NDANT:** SARA NEWSOME BURNS, et al.

| | CASE NUMBER: |
|---|---|
| **PPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION**<br>☒ **ENFORCEMENT OF JUDGMENT**  ☐ **ATTACHMENT (Third Person)**<br>☒☒ Judgment Debtor  ☐ Third Person | 711064 |

## ORDER TO APPEAR FOR EXAMINATION

*(name)*: SARA NEWSOME BURNS

U ARE ORDERED TO APPEAR personally before this court, or before a referee appointed by the court, to

1. ☒☒ furnish information to aid in enforcement of a money judgment against you.

2. ☐ answer concerning property of the judgment debtor in your possession or control or concerning a debt you owe the judgment debtor.

3. ☐ answer concerning property of the defendant in your possession or control or concerning a debt you owe the defendant that is subject to attachment.

| e: 11/20/98 | Time: 8:30 a.m. | Dept. or Div.: 44 | Rm.: |
|---|---|---|---|
| ress of court ☒ shown above ☐ is: | | | |

s order may be served by a sheriff, marshal, constable, registered process server, or the following specially appointed person me):

NOV 1 0 1998

Ronald S. Prager   *(SIGNATURE OF JUDGE OR REFEREE)*

**This order must be served not less than 10 days before the date set for the examination.**

## IMPORTANT NOTICES ON REVERSE

### APPLICATION FOR ORDER TO APPEAR FOR EXAMINATION

☒ Judgment creditor  ☐ Assignee of record  ☐ Plaintiff who has a right to attach order

plies for an order requiring *(name)*: SARA NEWSOME BURNS   to appear and furnish information aid in enforcement of the money judgment or to answer concerning property or debt.

he person to be examined is

☒☒ the judgment debtor

☐ a third person (1) who has possession or control of property belonging to the judgment debtor or the defendant or (2) who owes the judgment debtor or the defendant more than $250. An affidavit supporting this application under CCP § 491.110 or § 708.120 is attached.

he person to be examined resides or has a place of business in this county or within 150 miles of the place of examination.

☐ This court is not the court in which the money judgment is entered or *(attachment only)* the court that issued the writ of attachment. An affidavit supporting an application under CCP § 491.150 or § 708.160 is attached.

☐ The judgment debtor has been examined within the past 120 days. An affidavit showing good cause for another examination is attached.

are under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

: November 6, 1998

MICHAEL REED
*(TYPE OR PRINT NAME)*   *(SIGNATURE OF DECLARANT)*

| Form Approved by the<br>cial Council of California<br>8. EJ-125 [New July 1, 1984] | **APPLICATION AND ORDER**<br>**FOR APPEARANCE AND EXAMINATION** | WEST GROUP<br>Official Publisher<br>CCP 491.110, 708.110 |
|---|---|---|

### Page 13

(1)  A. It's in Urbana, Illinois.
(2)  Q. Do you know what street?
(3)  A. Nope.
(4)  Q. When was that account established?
(5)  A. This week.
(6)  Q. Why?
(7)  A. Because I was -- I had had my mail gone
(8)  through, and I did not want to leave the account that I
(9)  had opened, so I put it in that bank.
(10)  Q. What account did you have open that you
(11)  didn't want to leave open?
(12)  A. In Vanguard.
(13)  Q. Vanguard. Do you still have a Vanguard
(14)  account?
(15)  A. I have a Windsor account.
(16)  Q. So you have money invested in Windsor?
(17)  A. Um-hum.
(18)  Q. Is it Windsor 1 or 2?
(19)  A. I believe it's Windsor -- I'm not sure.
(20)  Q. Okay. When -- how much is in that account?
(21)  A. I think around 2500.
(22)  Q. How much -- did you move some of that to the
(23)  Urbana, Illinois, bank?
(24)  A. No.
(25)  Q. What is in the Urbana, Illinois, bank?
(26)  A. What do you mean "what's in there?
(27)  Q. Well, how much money's in it or what's in it?
(28)  A. I'd say at this point around $900.

### Page 14

(1)  Q. What kind of account is it?
(2)  A. Checking.
(3)  Q. Who is in Urbana, Illinois?
(4)  A. My father.
(5)  Q. Okay. Did he set the account up for you?
(6)  A. Yes.
(7)  Q. And what's his name and address?
(8)  A. Jack Newsome, N-e-w-s-o-m-e.
(9)  Q. Address?
(10)  A. He lives on Barringer Circle.
(11)  Q. In Urbana?
(12)  A. Um-hum.
(13)  Q. Do you know his telephone number?
(14)  A. I don't know it offhand.
(15)  MR. LAWTON: And I don't think that's really
(16)  relevant.
(17)  BY MR. REED:
(18)  Q. Is he holding any money for you?
(19)  A. No, he isn't.
(20)  Q. Is anyone holding any money for you other
(21)  than financial institutions or banks?
(22)  A. No.
(23)  Q. Now, you've got a Washington mutual account
(24)  on Garnet that you believe is overdrawn at present. You
(25)  have an Illinois -- and you don't know what bank it's in.
(26)  Have you received any bank statements at all?
(27)  A. No.
(28)  Q. What was used -- what did you use to open the

### Page 15

(1)  account?
(2)  A. The Vanguard money market got shifted over to
(3)  that state after my mail had been tampered with.
(4)  Q. What made you think your mail was tampered
(5)  with?
(6)  A. Because ironically, my attorney's mail and
(7)  financial statements were ripped open.
(8)  Q. Where --
(9)  A. I suspect it's from your client.
(10)  Q. You mean out of the mailbox?
(11)  A. Yes.
(12)  Q. Do you have any reason to believe it's my
(13)  client other than the fact that you think it is?
(14)  A. Yes. I feel like who else would be
(15)  interested in my attorney's correspondence to me along
(16)  with financial information. Nobody else cares.
(17)  Q. Do you think I did it?
(18)  A. I think your client did it.
(19)  Q. Okay. So you had -- let me straighten this
(20)  out then. So you've got that Illinois account and you
(21)  have a Vanguard account presently?
(22)  A. The Windsor.
(23)  Q. The Windsor account. Vanguard's a series of
(24)  funds and Windsor's one fund. You're telling me you have
(25)  a Windsor account in the Vanguard system; is that right?
(26)  A. That's right.
(27)  Q. And no other accounts in the Vanguard system
(28)  or no other mutual accounts?

### Page 16

(1)  A. No.
(2)  Q. Do you have a brokerage account of any kind?
(3)  A. No.
(4)  Q. Do you have any stocks, bonds, other than the
(5)  Windsor?
(6)  A. No.
(7)  Q. And you sent the money market fund from the
(8)  Vanguard funds to Urbana, and that was about $900?
(9)  A. There -- I made payments this week because I
(10)  am filing for bankruptcy, and I paid all my past debtors
(11)  off including the IRS.
(12)  Q. Did you owe the IRS something?
(13)  A. Yes.
(14)  Q. What did you pay the IRS?
(15)  A. 70-.
(16)  Q. Seventy what?
(17)  A. Thousand.
(18)  Q. When?
(19)  A. This week.
(20)  Q. Do you have a bankruptcy attorney?
(21)  A. Yes.
(22)  Q. Who's that?
(23)  A. Scott Kehn.
(24)  Q. Can you spell the last name?
(25)  A. K-e-h-n.
(26)  Q. Okay. Other than those three accounts, the
(27)  Washington Mutual, Illinois, and Vanguard accounts, do you
(28)  have any other accounts, any kind of savings institution,

Page 19

(1) Q. And you purchased that this month, November
(2) '99 – '98.
(3) A. I think it was in October.
(4) Q. What did you pay for that?
(5) A. Well, I put my car down for a payment, down
(6) payment, and there's like 10,000 owing on it.
(7) Q. And to whom is that owed?
(8) A. To Western Family.
(9) Q. That's a mortgage company of some kind?
(10) A. Um-hum.
(11) Q. Yes?
(12) A. Yes.
(13) Q. Do you have any interest in Western Family?
(14) A. No.
(15) Q. Do you know why their name isn't on as a
(16) legal owner, why they haven't put on legal ownership of
(17) papers to the DMV?
(18) A. No.
(19) MR. LAWTON: Lacks foundation, call for
(20) speculation.
(21) BY MR. REED:
(22) Q. Do you know whether you are listed as the
(23) legal owner of that automobile at the DMV?
(24) A. Well, I think my name would be somewhere on
(25) the DMV's stuff.
(26) Q. As a registered owner, what about the legal
(27) owner? Who's the legal owner?
(28) A. I assume I am.

(1) cans in your backyard? Do you have any other monies saved
(2) or put away in any sense?
(3) A. No.
(4) Q. Okay. Do you have any cash at home?
(5) A. No.
(6) Q. I take it you haven't got any cash on you?
(7) A. No.
(8) Q. Do you have a power of attorney to sign
(9) checks or anything else from anyone?
(10) A. My – we – I don't have power of attorney.
(11) My father and I have been in the process of setting up a
(12) trust before this got out of hand.
(13) Q. Tell me about this trust. Did it ever get
(14) set up?
(15) A. No.
(16) Q. What was the purpose of it?
(17) A. I'm disabled and I was concerned that if I
(18) got in a position where I couldn't take care of my
(19) matters, someone needed to.
(20) Q. Does your disability have anything to do with
(21) your mental acuity?
(22) MR. LAWTON: Counsel, I'm not sure what that
(23) has to do with –
(24) THE WITNESS: What's that have to do with my
(25) debts?
(26) BY MR. REED:
(27) Q. Has to do with what you're telling me. You
(28) were setting up a trust because you were concerned about

Page 18

(1) not being able to take care of yourself.
(2) A. I think that was a very attacking statement,
(3) and I'm not going to answer it.
(4) Q. That's fine. It wasn't meant to be
(5) attacking.
(6) A. It was attacking.
(7) Q. Well, I'm sorry you took it that way, but I'm
(8) not going to argue with you about it. I just want to know
(9) if you have any indication that you're going to have to be
(10) taken care of so that's why this trust was being set up.
(11) Would you answer the question, please.
(12) A. I'm sorry. What's your question?
(13) Q. Do you have any indication that you're going
(14) to be – that someone is going to need to take care of you
(15) in the near future because of your disabilities, whatever
(16) they are?
(17) A. My disabilities have taken me by surprise
(18) many times in my life, and I have had to learn that I just
(19) need to prepare for those times.
(20) Q. Okay. Do you own a boat?
(21) A. No.
(22) Q. Do you own an automobile?
(23) A. I'm making payments on one.
(24) Q. Is that the 1993 Celica?
(25) A. No. Oh, yes, it is.
(26) Q. Do you have another automobile besides the
(27) 1993 Celica?
(28) A. No.

Page 20

(1) Q. And do you know whether Western Family has
(2) listed itself or has any interest registered with the DMV?
(3) A. I don't know.
(4) Q. When did you borrow the 10,000 against the
(5) car?
(6) A. I don't know.
(7) Q. What is security for the 10,000?
(8) A. The car, isn't it?
(9) Q. Well, that's what I'm asking you.
(10) MR. LAWTON: Yeah. I assume it's the
(11) vehicle.
(12) BY MR. REED:
(13) Q. In order to have a security interest in a
(14) vehicle under the laws of the State of California, you
(15) have to have – you have to be protected by filing with
(16) the DMV, and you don't know whether Western Financial did
(17) that?
(18) MR. LAWTON: Asked and answered. Don't
(19) answer that.
(20) BY MR. REED:
(21) Q. Who do you deal with at Western Family?
(22) A. No one directly.
(23) Q. Is there anybody there who – can you recall
(24) the name of the person you dealt with with respect to your
(25) car?
(26) A. No.
(27) Q. You just called up and said "I need a loan"?
(28) A. Pretty much, yeah.

(1) that FPA has filed for bankruptcy, and there is an issue
(2) that the final installment of that may not be received.
(3)    Q. Did you make any effort -- did you or anybody
(4) on your behalf such as your attorney ask a United States
(5) attorney or the government to expedite your payment of
(6) that last money?
(7)    A. We -- I -- the U.S. attorney is looking into
(8) that matter, and I have not --
(9)    Q. Who --
(10)    A. Jan Appel is my attorney handling that.
(11)    Q. Where did you meet with Jan Appel?
(12)    A. His office, on the phone.
(13)    Q. Okay. Do you know where he lives?
(14)    A. Why would I know where he lives?
(15)    Q. Do you know where he lives?
(16)    A. No.
(17)    Q. All right. The money that you get from the
(18) government goes to him, and then he distributes it to you?
(19)    A. (Witness nods head).
(20)    Q. Yes?
(21)    A. Yes.
(22)    Q. Does he take a fee out of that?
(23)    A. Yes.
(24)    Q. How much does he take out of it?
(25)    MR. LAWTON: Counsel, I think that's
(26) privileged. I don't think you're entitled to inquire into
(27) the fee arrangements Miss Burns has with her lawyer.
(28)    MR. REED: I'll withdraw it.

(1) there.
(2)    MR. LAWTON: I don't think you're entitled to
(3) ask that. I think that's -- I think that is privileged,
(4) and if you think I'm mistaken, we can talk about it but --
(5)    MR. REED: We'll go inside and ask the judge
(6) in a moment.
(7)    BY MR. REED:
(8)    Q. Do you owe anybody any money presently?
(9)    A. You mean personal people or --
(10)    Q. Do you owe anybody any money personally?
(11)    A. Sure.
(12)    Q. Okay. other than -- you've indicated two
(13) trust deeds against your house and you believe that
(14) there's a debt against your automobile. Other than those
(15) three things, do you owe anybody any money?
(16)    A. I have a student loan.
(17)    Q. How much is owed?
(18)    A. Around $10,000 at this point.
(19)    Q. Okay. Anything else?
(20)    A. I have I -- there's like utility bills and
(21) things like that.
(22)    Q. I'm looking for outstanding debts, not just
(23) your monthly living expenses. Can't think of any others?
(24)    A. Not off the top of my head. That doesn't
(25) mean I don't have any. I just don't know of any.
(26)    Q. You paid the IRS, you said, $70,000 just last
(27) week. Where did that money come from?
(28)    A. The account in Illinois.

(1)    BY MR. REED:
(2)    Q. With respect to your -- the amount that you
(3) get, how much have you actually received from the
(4) government?
(5)    A. Somewhere around 400-. In between 400- and
(6) 450,000.
(7)    Q. Okay. And what -- that's over the period of
(8) beginning when, 1996?
(9)    A. Um-hum.
(10)    Q. So, over the last two years, you received
(11) somewhere between 400- and 450,000, correct?
(12)    A. Yeah.
(13)    Q. All right. What's happened to that money?
(14) Where is it?
(15)    A. It's gone. I've had a lot of debts to take
(16) care of.
(17)    Q. Tell me all the debts that you've paid with
(18) that money.
(19)    A. I will do the best I can to tell you the
(20) debts I paid. I don't have anything in front of me. Most
(21) of it has gone to attorneys and to the IRS.
(22)    Q. How much went to the attorneys?
(23)    MR. LAWTON: Well, Counsel, once again I'm
(24) not sure whether you're entitled to inquire into her fee
(25) arrangements with her lawyers.
(26)    MR. REED: I'm not inquiring about the fee
(27) arrangement. I'm looking for where the assets went. They
(28) went to attorneys. I just want to know how much went

(1)    Q. That you put $900 in?
(2)    A. No. The money --
(3)    MR. LAWTON: I don't think she testified she
(4) put $900 in it, Counsel. I think her testimony was to the
(5) effect that the balance today is $900.
(6)    BY MR. REED:
(7)    Q. How much did you put into the account in
(8) Illinois? I think that's what I asked.
(9)    A. I think it was around 130,000.
(10)    Q. And where did that come from?
(11)    A. The Vanguard money market.
(12)    Q. All right. So the total amount that you put
(13) into this -- I asked you if you transferred any funds.
(14)    A. I think I was real up front with you that I
(15) did that. I wasn't trying to hide anything.
(16)    Q. I didn't accuse you of it.
(17)    A. Sounds like you are.
(18)    MR. LAWTON: Well, let's have -- I don't
(19) think there's a question pending, so let's have a
(20) question.
(21)    BY MR. REED:
(22)    Q. The question is did you -- is the total
(23) amount of money that you moved into this Illinois account
(24) about $130,000 up to date?
(25)    A. That was the amount, and then I paid off my
(26) taxes.
(27)    Q. That was about 70,000?
(28)    A. For the debts, yes.

SARA NEWSOME BURNS

## Page 33

(1) BY MR. REED:
(2) Q. Have you ever filed bankruptcy before?
(3) A. No.
(4) Q. Okay. Have you made any assignments for
(5) benefit of creditors or anything of that nature in the
(6) last year?
(7) A. No.
(8) Q. Does the state or any other government entity
(9) owe you any money?
(10) A. No.
(11) Q. You don't have any tax returns coming?
(12) A. Just the Qui Tam, what's coming out of the
(13) Qui Tam, if any.
(14) Q. Do you have anything -- do you have any tax
(15) refund, anything like that applied for or expected?
(16) A. I have no idea.
(17) Q. Would that be Mr. Hosaka who'd know that?
(18) A. Well, yeah, if I go back to him for next
(19) year's taxes.
(20) Q. What are your average monthly expenses?
(21) A. I have no idea.
(22) Q. Who pays them?
(23) A. I pay them.
(24) Q. Well, give me a rough estimate then. I don't
(25) need to get them all itemized. I just need a rough idea
(26) of how much you spend monthly.
(27) A. I would say somewhere around 3- to 4,000 a
(28) month.

## Page 34

(1) Q. And that includes your mortgage payments,
(2) payments on your car?
(3) A. (Witness nods head).
(4) Q. Yes?
(5) A. Yes.
(6) Q. What is the payment on your car?
(7) A. I believe it's around $200.
(8) Q. Who do you make that to?
(9) A. Western Family.
(10) Q. Have you made the first payment yet?
(11) A. Yes.
(12) Q. Okay. What account -- did you pay them by
(13) check?
(14) A. Yes, I did.
(15) Q. What account did you draw that check from?
(16) A. The Washington Mutual.
(17) Q. At Garnet?
(18) A. Um-hum.
(19) Q. Yes?
(20) A. Yes.
(21) Q. Okay. The mortgage payment to B of A, how
(22) much is that?
(23) A. $950 approximately.
(24) Q. And the second trust to Western Family, how
(25) much is that a month?
(26) A. It's a -- 180 is the amount.
(27) Q. A month?
(28) A. Um-hum.

## Page 35

(1) Q. Have you furnished any loan application or
(2) financial statement to anyone other than the Bank of
(3) America in the last two years?
(4) A. No.
(5) Q. Did you have to give one to Western Family?
(6) A. Oh, yes, I did.
(7) Q. Other than those two, have you done anything
(8) like that?
(9) A. Not that I'm aware of at this point.
(10) Q. Okay. Are you -- do you have any assets that
(11) we haven't mentioned so far?
(12) A. No.
(13) Q. Okay. Let's go back to the moment -- to
(14) where this money went. Other than the taxes that you've
(15) talked about, give me the best estimate that you can of
(16) the total amount of taxes you've paid out of the $450,000
(17) that you've received?
(18) MR. LAWTON: Can you ballpark?
(19) A. For the Federal, I would say around 160,000.
(20) BY MR. REED:
(21) Q. And for the state?
(22) A. I want to say around 40-.
(23) Q. All right. Now, apart from attorneys' fees
(24) which we'll get to in a moment, were there any other
(25) amounts over $5,000 that you've spent of that money, any
(26) other payments that you've made to anyone over $5,000 out
(27) of that money, out of the $450,000?
(28) A. Of over $5,000?

## Page 36

(1) Q. Right.
(2) A. Well, I refinanced my house. That cost. And
(3) then when I purchased the house, that cost.
(4) Q. So you took money out of this money to
(5) purchase the house?
(6) A. Of course I did.
(7) Q. And how much did you put down then?
(8) A. I don't know how much it cost to refinance.
(9) I'd have to look at that.
(10) Q. All right. The down payment?
(11) A. Oh, the down payment, I want to say
(12) between -- around 35- or 40-.
(13) MR. LAWTON: Counsel, I thought we were going
(14) to be here a half hour.
(15) MR. REED: I did too.
(16) MR. LAWTON: Do you have an estimate how much
(17) longer this is going to take?
(18) MR. REED: No, not long. Almost done.
(19) BY MR. REED:
(20) Q. Okay. As I see it, we're still about -- you
(21) know, looking at a couple hundred thousand dollars that we
(22) haven't been able to find out of the 400- to 450,000?
(23) A. I don't have --
(24) Q. In terms of this examination, it's not saying
(25) you're hiding anything. Can you tell me where it is?
(26) MR. LAWTON: I'm going to object to that
(27) characterization. I don't think it's consistent with her
(28) testimony, so I think the characterization is incorrect.

## Page 37

(1)    BY MR. REED:
(2)    Q. All right. Other than the monies that we've
(3)  talked about, can you tell me where the other couple
(4)  hundred thousand went?
(5)    A. Attorneys.
(6)    Q. Okay. So have you paid attorneys almost a
(7)  couple hundred thousand total?
(8)    A. I have paid over a hundred thousand in
(9)  attorney fees.
(10)    Q. Over and above the 200,000 that was paid by
(11)  the government to the attorneys?
(12)    A. That's correct.
(13)    Q. Okay. Now, you have an expectation of
(14)  getting money from the federal government at some point?
(15)    A. I don't have any expectation on anything in
(16)  my life anymore.
(17)    Q. There is a debt -- or there is a potential
(18)  that you will get another payment from the federal
(19)  government; is that correct?
(20)    A. Potential.
(21)    Q. Yes. And that would be paid through Jan
(22)  Appel?
(23)    A. Yes.
(24)    Q. And what efforts have you made to get that
(25)  money paid sooner than it's due date, normal due date?
(26)    MR. LAWTON: I'm going to -- I don't -- I'm
(27)  going to object to this question on the grounds it may
(28)  seek to invade the attorney/client privilege.

## Page 39

(1)    Q. And you have made some effort by talking to
(2)  the U.S. attorney or having the U.S. attorney talk to see
(3)  if you can get that money advanced. Just assuming that's
(4)  true, why have you done that?
(5)    MR. LAWTON: I'm going to admonish the
(6)  witness again, if to answer this question you would have
(7)  to talk about communications that you had with Mr. Appel,
(8)  that's protected by the privilege, and you don't have to
(9)  answer the question.
(10)    BY MR. REED:
(11)    Q. I'm just looking for your state of mind. Why
(12)  have you tried to get the money advanced?
(13)    MR. LAWTON: Assumes facts not in evidence.
(14)    A. You're assuming things and there really -- I
(15)  don't really want to discuss what I discussed with
(16)  Mr. Appel.
(17)    BY MR. REED:
(18)    Q. How much is the payment that's supposed to
(19)  come in July supposed to be?
(20)    A. Somewhere around 150,000.
(21)    Q. If you file bankruptcy, will that go into
(22)  your bankruptcy or do you know?
(23)    A. I don't --
(24)    MR. LAWTON: That really calls for a legal
(25)  conclusion.
(26)    BY MR. REED:
(27)    Q. Okay. Has anybody discussed with you --
(28)  without telling me who, without telling me what was said,

## Page 38

(1)    Do you understand the privilege? He's not
(2)  allowed to ask you questions about stuff you told
(3)  Mr. Appel to do or stuff he told you he was going to do;
(4)  so, if you think you can answer the question without going
(5)  into that, fine, but if in order to answer the question
(6)  you would have to talk about communications between you
(7)  and Mr. Appel, you don't have to answer, and I'll instruct
(8)  you not to answer.
(9)    A. Okay. I don't want to answer that because I
(10)  do feel that it is violating my --
(11)    MR. LAWTON: The privilege.
(12)    THE WITNESS: Yes.
(13)    BY MR. REED:
(14)    Q. Now, you have a due date. There's a date in
(15)  the judgment over in federal court that indicates when
(16)  this payment is supposed to be paid by, correct?
(17)    A. Right.
(18)    Q. And this is when?
(19)    A. It's in July.
(20)    Q. July 8th?
(21)    A. That's the -- somewhere around -- in July,
(22)  30 days upon their receipt.
(23)    Q. Okay.
(24)    A. Of the payment of July that they make.
(25)    Q. Okay. So, if FPA pays the government some
(26)  kind of payment, then you're supposed to get your last
(27)  payment in July, within 30 days of their payment?
(28)    A. Right.

## Page 40

(1)  has anybody discussed with you that that -- if you file
(2)  bankruptcy, that money will go in your bankruptcy?
(3)    MR. LAWTON: I don't want you to answer it in
(4)  order to answer you would have to talk about legal
(5)  discussions with any of your lawyers.
(6)    THE WITNESS: Right. I won't answer that.
(7)    BY MR. REED:
(8)    Q. Now, who made the payments from the Urbana
(9)  bank to the IRS and the property taxes and state tax?
(10)    A. I did.
(11)    Q. Are there other signatories on that account
(12)  other than you?
(13)    A. Yes.
(14)    Q. Who else is a signatory on the account?
(15)    A. My dad.
(16)    Q. And you wrote the checks out?
(17)    A. Yes.
(18)    Q. But you can't tell me the name of the bank?
(19)    A. I don't recall the name of the bank.
(20)    Q. Is its address actually in Urbana, Illinois?
(21)    A. Yes.
(22)    Q. In what form are the funds held there? Is it
(23)  in a brokerage account? Is it a checking account? A
(24)  savings account?
(25)    A. I've answered that already.
(26)    Q. Is it interest-bearing?
(27)    A. No.
(28)    Q. Do you have anything that pays you interest

## Page 41

(1) other than the — do you have anything that pays you
(2) interest at this time?
(3)     A. No.
(4)     MR. LAWTON: That's asked and answered,
(5) Mike.
(6)     BY MR. REED:
(7)     Q. All right. Without telling me what your
(8) agreements were or how much was paid to anybody, tell me
(9) the names of all the attorneys that you've paid money to
(10) in the last two years.
(11)     A. Well, let's see. Do you want the attorneys
(12) on the Qui Tam case?
(13)     Q. Yes. I'm not interested in Mr. Lawton's
(14) plan, Mr. Grossman, Mr. Tiffany. I'm interested in people
(15) that have been paid out of the Qui Tam monies.
(16)     A. Gray-Cary.
(17)     Q. And that was dealt with in the trial. Was
(18) there any money outside of the money that we dealt with in
(19) the trial paid to them, in our trial?
(20)     A. I'm very confused what you're asking me at
(21) this point. What are you —
(22)     Q. Have you paid them any money since the trial?
(23)     A. Since the trial that —
(24)     Q. Of this case.
(25)     A. Of this case, Gray-Cary, no.
(26)     Q. All right. Anybody else? I guess Oaks, did
(27) she get all her money?
(28)     A. I'm sure you probably paid her, so I don't

## Page 42

(1) know.
(2)     Q. Anybody else?
(3)     A. John Seltman has received some, John Appel.
(4)     MR. LAWTON: Mike, we've been at it almost an
(5) hour.
(6)     BY MR. REED:
(7)     Q. Is there anything else, any other assets or
(8) anything else that we haven't covered today that you have?
(9)     A. (Witness shakes head).
(10)     Q. In any form whatsoever.
(11)     A. Not that I — not to my current knowledge or
(12) recollection.
(13)     Q. How do you intend to pay your 3- to 4,000
(14) monthly expenses on $700 a month coming in?
(15)     A. I'm filing for bankruptcy. I probably will
(16) have to — I have no idea.
(17)     MR. REED: Okay. I think there's nothing
(18) else then.
(19)     * * *
(20)
(21) I declare under penalty of perjury that the
(22) foregoing testimony is true and correct.
(23)     Executed on                    , 19      ,
(24) at                          , California.
(25)
(26)
(27)
(28)     SARA NEWSOME BURNS

EXHIBIT "7"

1  **SAMPSON & ASSOCIATES**
   Bryan D. Sampson (#143143)
2  Elizabeth Aronson (#167869)
   2139 First Avenue
3  San Diego, California 92101
   (619)557-9420 / Fax (619)557-9425
4
   Attorneys for Creditor
5  BRADLEY PROULX

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| In re: | CASE NO. 99-33191-B7 |
| SARA NEWSOME BURNS, <div align=right>Debtor.</div> | Adv. No.: 01-90355-B7 |
| | Chapter 7 |
| RICHARD KIPPERMAN, Trustee | **[Proposed] ORDER FOR SUMMARY JUDGMENT** |
| <div align=right>Plaintiff,</div> | |
| v. | |
| BRADLEY PROULX, an individual | Date:   December 17, 2001 |
| <div align=right>Defendant.</div> | Time:   2:30 p.m.<br>Ctrm:   4<br>Judge:  Hon. Peter W. Bowie |

18

19       Creditor/Defendant BRADLEY PROULX's motion for summary judgment in response to

20  Plaintiff RICHARD KIPPERMAN's Complaint To Determine Nature and Extent of Trustee's Lien And

21  For Declaratory Relief based upon 11 U.S.C. §544(a)(1) came before this court on the above date and

22  time upon evidentiary hearing, the Honorable Peter W. Bowie, presiding.  Creditor BRADLEY

23  PROULX appeared through his counsel, Bryan D. Sampson.  Trustee RICHARD KIPPERMAN

24  appeared through his counsel, L. Scott Keehn.  Upon reviewing the pleadings filed by the parties,

25  hearing oral argument and hearing evidence presented by both parties, and good cause appearing

26  therefor,

27  ///

28  ///

<div align=center>1</div>

1    The court hereby finds that Creditor PROULX has a perfected, secured, non-avoidable lien on

2   Debtor Sara Newsome Burns assets, including but not limited to the approximately $150,000 *Qui Tam*

3   settlement cash funds.  Therefore, Plaintiff KIPPERMAN does not hold a first priority lien under 11

4   U.S.C. §544(a)(1) on Debtor's property, including but not limited to, the monies now being held by the

5   Trustee pursuant to an earlier court order.

6    IT IS HEREBY ORDERED that Creditor/Defendant BRADLEY PROULX's motion for

7   summary judgment is sustained and Plaintiff RICHARD KIPPERMAN's claims for relief in his

8   complaint are hereby denied.

9    **IT IS SO ORDERED.**

10

11   DATED: _____    _____
                                        Judge, United States Bankruptcy Court
12

13   NOTICE:    Signature by the attorney constitutes a certification under Federal Rule of Bankruptcy
14                     Procedure 9011 that the relief provided by the Order is the relief granted by the Court.

15   Submitted by:

16   November 5, 2001    _____
                                   Bryan D. Sampson
17

18

19

20

21

22

23

24

25

26

27

28

IN RE SARA NEWSOME BURNS
CASE NO. 99-33191-B7 / ADV. NO.: 01-90355-B7
ORDER FOR SUMMARY JUDGMENT