1  L. Scott Keehn (SBN 61691)
   Lynn M. Beekman (SBN 149325)
2  **ROBBINS & KEEHN**
   A Professional Corporation
3  530 "B" Street, Suite 2400
   San Diego, California  92101
4  Telephone:  (619) 232-1700

5  Special Counsel for
   **RICHARD KIPPERMAN, Chapter 7 Trustee**

6

7

8            **UNITED STATES BANKRUPTCY COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In re:                          ) **CASE NO. 99-33191-B7**
                                     )
12  **SARA NEWSOME BURNS**, an individual,  ) **ADV. NO.  01-90355-B7**
                                     )
13                                   )
              Debtor.                ) **MEMORANDUM OF POINTS AND**
14  _____ ) **AUTHORITIES IN OPPOSITION TO**
                                     ) **CREDITOR BRADLEY PROULX'S**
15                                   ) **MOTION FOR SUMMARY**
                                     ) **JUDGMENT; AND IN SUPPORT OF**
16  **RICHARD KIPPERMAN**, Trustee,      ) **SUMMARY JUDGMENT IN FAVOR OF**
                                     ) **TRUSTEE.**
17            Plaintiff,             )
                                     )
18  v.                               )
                                     )
19  **BRADLEY PROULX**, an individual,   ) DATE: December 17, 2001
                                     ) TIME:      2:30 p.m.
20                                   ) DEPT.:     Four (4)
            Defendant.               ) JUDGE:    Hon. Peter W. Bowie
21                                   )
                                     )
22  _____ )

23

24

25

26

27

28

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

80723/5021.01

**TABLE OF CONTENTS**

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    UNDISPUTED FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . 3

III.   LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.    Proulx Has No Valid ORAP Lien. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.    Proulx Never Created a Third Party ORAP Lien. . . . . . . . . . . . . . . . . . . . . . . 6
        2.    Settled Principles of Statutory Construction Compel
              The Conclusion That Section 708.120 Is Controlling
              with Respect to Proulx's Claim.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            (a)    The Statute Should Not Be Interpreted to Make
                      Any Portion Thereof Superfluous or Nugatory. . . . . . . . . . . . . . . . . . 8
            (b)    Specific Provisions of a Statutory Scheme Must
                      Govern Its General Provisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.    Proulx's Reliance on § 708.110 is Misplaced Insofar as
              Disputed Fund is Concerned. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        4.    ORAP Liens Apply Only to Presently Held Property and
              Can Not Be Applied to After Acquired Property. . . . . . . . . . . . . . . . . . . . . . 10
        5.    Whatever General ORAP Lien May Have Once Existed
              Has Now Lapsed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.    Proulx has no Valid or Enforceable Judicial Lien.  . . . . . . . . . . . . . . . . . . . . . . . 13

        1.    Proulx's Judicial Lien Did Not Apply or Attach to
              the Disputed Fund. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.    The Judicial Lien Never Attached to the Qui Tam Funds
              Because They Were in the Custody of the Court at the
              Time Proulx Attempted to Create the Lien. . . . . . . . . . . . . . . . . . . . . . . . . 15
        3.    Even If Proulx had a Valid Judicial Lien, It is Voidable
              as a Preference Under 11 U.S.C. § 544. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    D.    Proulx Has No "So Called Levy" Lien Because The Turnover
        Order by Itself Did Not Create an Execution Lien and Proulx
        Never Levied on Burn's Entitlement to Any Proceeds under the
        Settlement Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    E.    Proulx Has No "Lien on Pending Action.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

80723/5021.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

Plaintiff RICHARD KIPPERMAN, the Chapter 7 Trustee (hereinafter the "Trustee"), respectfully submits the following Memorandum of Points and Authorities in Opposition to the Motion for Summary Judgment (the "Motion") brought by defendant/creditor BRADLEY PROULX ("Proulx"). In opposition to the Motion, the Trustee represents the following:

## I.    INTRODUCTION.

The defendant Bradley Proulx ("Proulx") thought he had, desperately wants, but in fact does not have, a valid enforceable lien on a sum of money now in excess of $151,489.16 (the "Disputed Fund"). Although it is clear from the moving papers that Proulx made several attempts to create a lien on the Disputed Fund, they all failed to achieve that desired purpose either because the statutory mechanism chosen was inapplicable, or the technique utilized was procedurally defective.[1]

Meanwhile, Proulx failed to exercise the one available procedural device that might have given him success — the "Third Party ORAP lien" envisioned by California's Code of Civil Procedure ("C.C.P.") § 708.120(c) — by serving a notice to appear for a third party judgment debtor's exam pursuant to the provisions of C.C.P. §§ 708.120(a) and (b). In the end, the conclusion is both simple and unavoidable: Proulx has no valid and enforceable lien on the Disputed Fund. That money is simply one portion of the cash component of '*property of the estate*" now in the hands and control of the plaintiff trustee, Richard Kipperman.

In what borders on a desperate attempt to persuade the court that his claims are legitimate, Proulx appears to have artificially "*edited*" both relevant factual information as well as applicable California law in order to induce the conclusion he desires. He has cobbled together four separate theories to support his assertion that his claim is secured. However, each of his efforts falls well short of the mark. In the end, the Proulx claims are a forensic version of the childhood fable, *The Emperor's New Clothes*. They are introduced with what appears to be a great pomp and circumstance that appear to make their reality a foregone conclusion; but, upon inspection, prove to be nonexistent. Beyond a very limited judicial lien on the Debtor's residence,[2] Proulx's claims are wholly unsecured. He has no entitlement to the Disputed Fund, and, based on an undisputed record, the Trustee is entitled to judgment in his favor.

/ / / / /

---

[1] See part III below.

[2] Which is neither implicated by nor relevant to the issued framed in this action.

## II.    UNDISPUTED FACTUAL AND PROCEDURAL BACKGROUND.

The operative facts are not in dispute.  However, in order to see through the arguments presented in the Motion, it is important to have a full understanding of the chronology of relevant events.  Set out below is that chronology:[3]

| | |
|---|---|
| September 24, 1991 | United States commenced an action in Federal District Court entitled *United States ex rel Newsome v. Family Practice Associates, et al.*, Civil Action No. 91-1325-E(P) (the "Federal Action").[4]<br>(Not mentioned in Proulx's moving papers.) |
| July 2, 1996 | The Federal Action is <u>dismissed with prejudice</u> in accordance with a Settlement Agreement and Release dated June 28, 1996 (the "Settlement Agreement").[5]<br>(Not mentioned in Proulx's moving papers.) |
| May 30, 1997 | Proulx commenced an action against the Sara Newsome Burns, the debtor herein ("Debtor"), in California Superior Court entitled *Proulx v. Newsome Burns*, Case No. 711064 (the "State Court Action").<br>(Not mentioned in Proulx's moving papers.) |
| July 22, 1997 | Order on Stipulation for Order Modifying Settlement Agreement is entered by Federal Court in the Federal Action.[6]<br>(Not mentioned in Proulx's moving papers.) |
| October 30, 1998 | Superior Court enters judgment in favor of Proulx and against the Debtor in the State Court Action.[7] |
| November 6, 1998 | Proulx recorded an Abstract of Judgment with the San Diego County Recorder's Office.[8] |
| November 10, 1998 | Proulx served the Debtor with a Notice to Appear for Examination, creating a lien on the Debtor's personal property pursuant to C.C.P. §§ 708.110(d) (the "ORAP Lien").[9] |

---

[3]  It is important to note that although Proulx, in his moving papers, included many of the dates set out herein, certain key dates were omitted.  They have been noted for the Court's convenience.  These items are supported by the Request for Judicial Notice filed concurrently herewith.  Except as noted to the contrary, the balance of the references are conceded (sometimes with inconsequential variances in precise date) by Proulx in his motion.

[4]  See "Trustee's Request for Judicial Notice of Exhibits in Opposition to Motion for Summary Judgment" (the "Trustee Judicial Notice"), Exhibit "A."

[5]  See Trustee Judicial Notice, Exhibit "B."

[6]  See Trustee Judicial Notice, Exhibit "C."

[7]  See "Request for Judicial Notice of Exhibits in Support of Creditor and Defendant Bradley Proulx's Motion for Summary Judgment" (the "Proulx Judicial Notice"), Exhibit "1."

[8]  See Proulx Judicial Notice, Exhibit "3."

[9]  See Proulx Judicial Notice, Exhibit "6."

ROBBINS & KEEHN, APC<br>ATTORNEYS AT LAW<br>2400 UNION BANK BUILDING · 530 "B" STREET<br>SAN DIEGO, CALIFORNIA 92101<br>TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9905

80723/5021.01

| | |
|---|---|
| January 13, 1999 | Proulx purportedly filed his Notice of Lien in the Federal Action.[10] |
| January 25, 1999 | Debtor filed a Chapter 13 bankruptcy petition with this Court, Case No. 99-00811-B13 (the "Chapter 13 Action").[11] |
| February 19, 1999 | Bankruptcy Court entered its "Order Authorizing Payment" (the "Payment Order"), instructing the United States to pay all sums due to the Debtor under the Settlement Agreement.[12] |
| February 26, 1999 | The United States issued its check as required and permitted by the Payment Order.[13] |
| March 12, 1999 | The Robbins & Keehn Firm open a special client's trust account pursuant to the Payment Order.[14] |
| July 22, 1999 | The Chapter 13 Action is dismissed.[15] |
| August 2, 1999 | Proulx filed a Notice of Judgment Lien with the California Secretary of State, which created a lien in his favor as of that date pursuant to C.C.P. § 697.510(a).[16] (Not mentioned in Proulx's moving papers.) |
| August 13, 1999 | Debtor filed her petition for relief under Chapter 7, commencing the instant bankruptcy proceedings. The filing set the preference recovery date under 11 U.S.C. § 547 as May 12, 1999.[17] |
| October 14, 1999 | The special client's trust account was closed and the Disputed Fund transferred to the Trustee.[18] (Not mentioned in Proulx's moving papers.) |

What is the most significant distillation of this chronology is the undisputed "*chain of custody*" of the Disputed Fund. The Fund was first, in the hands of the United States of America, in the Department of Treasury. The Treasury parted with that money by issuing its check payable to Sara Newsome Burns ("Burns") in care of Charles F. Robbins, Esq., in accordance with the mandate of the Payment Order. It was

/ / /

---

[10] See Proulx Judicial Notice, Exhibit "5."

[11] See Trustee Judicial Notice, Exhibit "D."

[12] See Trustee Judicial Notice, Exhibit "E."

[13] See Declaration of L. Scott Keehn filed concurrently herewith at ¶ 3 and exhibits.

[14] See Declaration of L. Scott Keehn ¶ 3.

[15] See Trustee Judicial Notice, Exhibit "F."

[16] See Trustee Judicial Notice, Exhibit "G."

[17] See Trustee Judicial Notice, Exhibit "H."

[18] See Declaration of L. Scott Keehn ¶ 3.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

80723/5021.01

1   then deposited in a special client's trust account pursuant to the same order where it remained until the

2   account was closed and the Disputed Fund delivered to the Trustee where it remains to this date.

3        Thus, it is undisputed that the Disputed Fund was never in the possession, custody or control of

4   Burns and it equally undisputed that neither the United States of America, any attorney in the firm of Robbins

5   & Keehn, or Mr. Kipperman have ever been served with an order to appear for a third party Debtor's

6   examination as contemplated by C.C.P. §§ 708.120(a) and (b).  Likewise, the Disputed Fund was never

7   subjected to levy.  These distilled facts demonstrate that Proulx did not ever obtain a thirty party ORAP lien

8   on the disputed fund.  With that realization, the last of his lien theories fails, and judgment must be entered

9   in favor of the Trustee.

10  **III.    LEGAL ARGUMENT.**

11  **A.    Standard of Review.**

12       Rule 56(c) of the Federal Rules of Civil Procedure sets the standard for reviving motion for summary

13  judgment.  It provides, in pertinent part, as follows:

14           The summary judgment sought shall be rendered forthwith if the pleadings, depositions,
             answers to interrogatories, and admissions on file, together with the affidavits, if any, show
15           that there is no genuine issue as to any material fact and that the moving party is entitled to
             a judgment as a matter of law.
16           F.R.C.P. 56(c).

17       Bringing such a motion also puts the moving party at risk of an adverse judgment if the undisputed

18  facts support a judgment in favor of the non-movant.  The fact that this Court may grant summary judgment

19  in favor of the Trustee even though the Trustee has not brought a separate cross motion for summary

20  judgment has been affirmed by the Ninth Circuit as follows:

21           It is, nevertheless, true that the overwhelming weight of authority supports the conclusion that
             if one party moves for summary judgment and, at the hearing, it is made to appear from all
22           the records, files, affidavits and documents presented that there is no genuine dispute
             respecting a material fact essential to the proof of movant's case and that the case cannot be
23           proved if a trial should be held, the court may *sua sponte* grant summary judgment to the
             non- moving party.[19]
24
         Regardless of who brought the motion, summary judgment is mandatory against a party who fails to
25
    sufficiently establish an element essential to its case, on which the party bears the burden of proof.[20]  Here
26
    Proulx contends that he has lien rights in the Disputed Fund, but cannot establish the elements necessary to
27
    support that claim. That holds true on all of his theories.  Beyond that, the undisputed factual record makes
28

---

[19]  *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982).

[20]  *Celotex Corp. v. Catrett*, 477 US 317, 322 (1986).

80723/5021.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

1    it clear that no lien rights were created.

2         The court's function is not to weigh the evidence, but to determine whether a genuine issue exists for

3    trial.[21]  There is no genuine issue unless sufficient evidence is established favoring the nonmoving party —

4    or here Proulx as the party at risk of an adverse judgment — for a jury to return a verdict for that party.[22]

5    If the evidence is not significantly probative summary judgment should be granted.[23]  Summary judgment also

6    is appropriate where the issues involve pure legal questions such as the interpretation of a statute.[24]  These

7    principles applied here compel judgment in favor of the Trustee.

8         Here the undisputed facts demonstrated that Proulx has no valid, enforceable lien rights of any kind

9    to the disputed fund.  That being the case, the Trustee is entitled to summary judgment in his favor, and

10   declaring the disputed fund to be free and clear of Proulx's lien claims.

11   **B.      Proulx Has No Valid ORAP Lien.**

12   **1.      *Proulx Never Created a Third Party ORAP Lien.***

13        In its decision in *In re Hilde*[25], the Ninth Circuit takes a detailed and analytic look at where and how

14   ORAP[26] liens fit into California's Legislative scheme for the enforcement of money judgments.  In a key

15   portion of its introductory discussion, the Circuit observes that there are in fact two distinct types of "ORAP

16   liens" created by that statutory scheme.  It specifically describes these two liens at page 953 as follows:

17        A lien is created on all of the debtor's nonexempt personal property **when the
         debtor is served** with an order to appear for a debtor's examination. Cal.Civ.Proc.Code
18       §708.110(d).  A lien is also created on the **debtor's personal property in the hands of
         a third party when the third party is served** with notice to appear for an examination.
19       Cal.Civ.Proc.Code §708.120.  These two liens are referred to as "ORAP" liens. (Emphasis
         added.)
20        What the Circuit is acknowledging by this passage is that the California Legislature has provided a

21   special version of its "ORAP" lien which can be created with respect to personal property "*in the hands of

22   a third party*" — that is, the provision of C.C.P. § 708.120 — and a general version of ORAP liens that

23

----

24        [21]  *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

25        [22]  *Id.*

26        [23]  See e.g. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288 (1968).

27        [24]  *Smith v. Califano*, 597 F.2d 152, 155, n.4 (9th Cir. 1979).

28        [25]  120 F.3d 950 (9th Circ. 1997) ["*Hilde*"].

          [26]  "ORAP" is the commonly used acronym which is short hand for "Order to Appear" for a Judgment Debtor's
     Exam which is the event that "*creates*" the special liens pursuant to Civil C.C.P. §§708.110(d) and 708.120(c); *Id* at p. 952.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 'B' STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

80723/5021.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

applies to all other circumstances — that created by C.C.P. § 708.110(d). The final sentence of the above-referenced paragraph demonstrates that the Circuit recognized that these statutory provisions, read together, actually created two distinct types of liens, both of which are commonly referred to as "ORAP liens."

The crucial distinction which is controlling here becomes obvious by reviewing the plain language in the face of §708.120 which provides, in pertinent part, as follows:

**§708.120. Orders where property in possession or control of third party.**

> (b) Not less than 10 days prior to the date set for the examination, a copy of the order shall be: (1) Served personally on the third person. (2) Served personally or by mail on the judgment debtor.
> (c) If the property in the third person's possession or control in which the judgment debtor has an interest or the debt owed by the third person to the judgment debtor is described in the affidavit or application for an order under supervision (a) in a manner reasonably adequate to permit it to be identified, **service of the order on the third person creates a lien** on the judgment debtor's interest in the property or on the debt for a period of one year from the date of the order unless extended or sooner terminated by the court. (Emphasis added.)

Reviewing this language demonstrates what has already been recognized by the Circuit: When attempting to create an ORAP lien on personal property which is in the hands of a third party, it becomes necessary to "ORAP" that party by serving them with a notice to appear for examination. Once such a notice is personally served on a party in possession or control of an asset in which the judgment debtor has an interest, the ORAP mechanism provided in §708.120(c) works in essentially the same manner as the general ORAP lien created by §708.110(d). Only the manner in which the Third Party ORAP lien is created is different.

But that is a crucial difference, and one which is fatal to Proulx's lien claims because the necessary order to appear for examination was never served on the Third Parties in possession and control of the Disputed Fund. Here the Disputed Fund was never at any relevant time in the Debtor's possession or control.[27] Rather, it has always been in the possession of Third Parties: The United States, the Robbins and Keehn Firm acting as officers of the Court under the Payment Order,[28] and finally the Plaintiff Trustee.[29] Since it is undisputed that none of the Third Parties were served with an Order to Appear, no Third Part

---

[27] See Part II above.

[28] Id.

[29] Id.

80723/5021.01

1   ORAP Lien was ever created.[30]

2   **2.    *Settled Principles of Statutory Construction Compel The Conclusion That Section 708.120***

3         ***Is Controlling with Respect to Proulx's Claim.***

4         At least two well settled principles of statutory construction compel the conclusion that with respect

5   to the Disputed Fund, Proulx's ability to create an ORAP lien is governed solely by Section 708.120(c) and

6   not 708.110(d).  First, it should be noted that the two operative provisions — Section 708.110 and 708.120

7   — are in fact consecutive sections within the Code of Civil Procedure and when considered together cover

8   the universe of personal property in which a judgment debtor may have an interest.  The first part of the

9   dichotomy extends to that which is in the possession and/or control of the judgment debtor.  The other

10  portion of that dichotomy then deals with that which is in the possession or control of third parties.  This

11  creates the kind of "*coherent and consistent*" statutory scheme which should be sufficient to stop the Court's

12  inquiry into any meanings other than those created by the plain language of the two statutory provisions read

13  together.[31]  That leads to the principles of construction that are both relevant and controlling here.

14  **(a)    *The Statute Should Not Be Interpreted to Make Any Portion Thereof Superfluous or***

15         ***Nugatory.***

16        Federal Courts have consistently held to the principle of statutory construction which teaches that

17  a reviewing Court should not construe the statute in such a manner as to render any portion thereof

18  superfluous or nugatory.[32]  If simply following the procedures set forth in Section 708.110(a) - (d) were

19  sufficient to create an ORAP lien that extended to property in the hands of a third party, then Section

20  708.120 (a) - (c) and its separate provisions for service upon the third party in order to create an ORAP

21  lien in such property would be unnecessary or superfluous and nugatory as reviewing Courts might say.  The

22  two separate mechanisms can not be ignored nor can they be telescoped into a single, all-purpose

23  mechanism without doing malice to the long standing rule of construction.  Each ORAP Lien Claim must be

24  tested against the mandates of the specific section from which its existence is created.  The Legislature

25  thought that the distinction was crucial, and so it is.  Compliance with one procedure will not create the

---

27      [30]  C.C.P. § 708.120(c).

28      [31]  See *In re Bonner Mall Partnership*, 2 F.3d 899, 913 (9th Cir. 1993).

        [32]  See *Mount. States, Etc. v. Santa*, 472 U.S. 237, 249 (1985); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337-339 (1979); *Colautti v. Franklin*, 439 U.S. 379, 392 (1979); *Neito v. Ecker*, 845 F.2d 868, 873 (9th Cir. 1988); *In re Loretto Winery Ltd*, 898 F.2d 715, 721-722 (9th Cir. 1990).

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9085

80723/5021.01

1    ORAP Lien as to property governed in the other.

2    It is undisputed that at all times relevant to this action, Burns did not have possession or control of

3    the Disputed Funds.  First, it was in the hands of the United States, then held in a Court controlled trust

4    account subject to the continuing jurisdiction reserved by Judge Hargrove's Payment Order dated February

5    19, 1999.  Although the Disputed Fund was always in the hands of a third person, no third person was ever

6    served with a Notice to Appear for Examination.  Such a notice would have been the critical lynch pin for

7    the creation of an ORAP lien under Section 708.120(c).  That is the section that now must be applied to

8    governs the undisputed factual record upon which this case must be decided, and it is fatal to Proulx's claim

9    of an ORAP lien.

10   **(b)**    ***Specific Provisions of a Statutory Scheme Must Govern Its General Provisions.***

11   This controlling principle of statutory construction has been articulated by the United States Supreme

12   Court in its decision in *Busic v. United States*.[33]  Although *Busic* was decided in the criminal context, it has

13   long been recognized that the same principle of construction applies in the civil context as well.[34]  The same

14   concept has been embraced here in the Ninth Circuit as well.  As indicated in its decision in *Amalgamated*

15   *Insurance Fund v. Geltman Industries, Inc*[35] at page 930, the Court specifically observes that:

16   Fundamental maxims of statutory construction require that a specific statutory
     section qualifies a more general section and will govern even though the general provision,
17   standing alone, would encompass the same subject. (Citations omitted).[36]

18   Here it is obvious that Section 708.120 is the "*specific*" section within the scheme which is intended

19   by the California legislature to modify and control over the general provisions of Section 708.110.  That being

20   the case, where the specifics of Section 708.120 establish the essential procedure for the creation of an

21   ORAP lien extending to property in the hands of a third party, this principle of statutory construction tells us

22   that we must look strictly to Section 708.120 to test the viability of the ORAP Lien Claim to the Disputed

23   Fund.  When we do that the undisputed facts disclose that the indispensable service on third parties on

24

25

26

27   [33]  446 U.S. 398, 407 (1980).

28   [34]  *Am. Cyanamind Co. v. Lincoln Laboratories, Inc.*, 403 F.2d 486, 488 (7th Cir. 1968).

     [35]  784 F.2d 926 (9th Cir. 1986).

     [36]  *In Accord Nitzberg v. Commission of Internal Revenue*, 580 F.2d 375 (9th Cir. 1978).

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

80723/5021.01

control of the disputed fund was never made. Thus, no ORAP Lien in that fund was ever created.[37]

**3.     *Proulx's Reliance on § 708.110 is Misplaced Insofar as Disputed Fund is Concerned.***

Proulx erroneously relies on the provisions of California Code of Civil Procedure § 708.110 to establish the existence of an ORAP lien on the Disputed Fund. However, Section 708.110 only creates a lien on personal property which is in the possession or control of the judgment debtor. That Section does not create a lien on property which is in the possession or control of a third party.[38]

Because the Disputed Fund at issue was, at all relevant times, in the hands of third parties other than the Debtor,[39] in order to attempt to create an ORAP lien on those funds, Proulx would necessarily have had to follow the requisite procedures mandated by Section 708.120, not Section 708.110. Thus, Proulx's reference to § 708.110 and the evidence he presents to show compliance with it are just off the mark and irrelevant to the issue before the Court in this Adversary Proceeding.

**4.     *ORAP Liens Apply Only to Presently Held Property and Can Not Be Applied to After Acquired Property.***

The ORAP lien is a creature of California law and is created pursuant to C.C.P. § 708.120(c), which provides as follows:[40]

> (c)     If the property in the third person's possession or control in which the judgment debtor has an interest or the debt owed by the third person to the judgment debtor is described in the affidavit or application for an order under subdivision (a) in a manner reasonably adequate to permit it to be identified, service of the order on the third person creates a lien on the judgment debtor's interest in the property or on the debt for a period of one year from the date of the order unless extended or sooner terminated by the court.

[37] C.C.P. § 708.120(c); cf *Hilde, supra*, at p. 953 (service of an Order to Appear is the act that "creates" the ORAP Lien).

[38] The procedures outlined in California Code of Civil Procedure § 708.120 must be followed in order to establish an ORAP lien on a debtor's personal property which is in the possession or control of a third party; See *In re Hilde*, 120 F.3d 950, 953 (9th Cir. 1997); and Part III.B.2 above.

[39] As early as February 26, 1999 (approximately six months prior to the filing of the Debtor's bankruptcy petition), the United States government transferred custody and control of the settlement funds to the Debtor's attorneys, Robbins & Keehn, APC. Then, on October 4, 1999, custody and control of the funds was transferred from Robbins & Keehn, APC to the Bankruptcy Trustee.

[40] For purposes of academic regularity, it should be noted that § 708.110(d) is likewise limited to present not future property interests. It specifically provides:

> The judgment creditor shall personally serve a copy of the order on the judgment debtor not less than 10 days before the date set for the examination. Service shall be made in the manner specified in Section 415.10. **Service of the order creates a lien on the personal property of the judgment debtor for a period of one year from the date of the order** unless extended or sooner terminated by the court. (Emphasis added.)

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 'B' STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

80723/5021.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9085

1    At the time that a General ORAP Lien was created — November 10, 1998 — the Debtor did not

2  yet have that portion of the Qui Tam Funds which became the Disputed Fund.  It was then held by the United

3  States Treasury and later was held *in custodia legis* by the R&K Firm pursuant to this Court's Payment

4  Order.[41]

5    As such, the Disputed Fund did not then constitute "*personal property of the judgment debtor*",

6  within the meaning of California's ORAP Lien Statutes.[42]  Proulx would have the Court read the ORAP

7  provisions in an expansive manner to include such "*after acquired*" property, but this reading would be

8  completely at odds with concepts of statutory construction and the California Statutes.

9    Here the operative canon of statutory construction is commonly known as *expressio unis est exlusio*

10  *alterius*[43] — this canon recognizes that the reading any one portion of a statutory scheme should be done

11  in reference to the context of the entire scheme, and that provisions which are included in one portion of that

12  statutory scheme should not be "*read into*" other portions of the same scheme where it is absent.[44]

13    California specifically recognizes the operative effect of that statute.[45]  The Ninth Circuit referenced

14  that concept with approval by quoting the *California Coastal Commission* case at p.955 of its decision in

15  *Hilde* as follows:

16    "[W]hen a statute omits a specific matter from its coverage, the inclusion of such a matter
     in another statute on a related subject demonstrates an intent to omit the matter from the

17    coverage of the statute in which it is not mentioned."

18  The Ninth Circuit recognizes that the California legislature enacted its "Enforcement of Judgment Law

---

[41]  See Part II above.

[42]  C.C.P. §§ 708.110(d) and 708.120(c).

[43]  The canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative. *Black's Law Dictionary* 602 (7th ed. 1999).

[44]  *Cramer v. Commissioner*, 64 F.3d 1406 (9th Cir. 1995) refusing to "read into" IRC § 83(e)(3), a provision requiring the IRS to disregard restrictions on transfer in determining whether or not securities have a "readily ascertainable" market value that would qualify them for favorable treatment, where that provision is expressly included in other portions of § 83 but expanded there]; *Foxgord v. Hischemoeller*, 820 F2d 1030, 1032 and 1035 (9th Cir 1987) [Reversing the District Courts exercise of jurisdiction over an "Honorary Counsel" under 28 U.S.C. § 1351(1)[Jurisdiction over foreign "counsels or vice counsels"] by recognizing that the congressional exclusion of the word "honorary" in that statute - which was included in others [i.e. 12 U.S.C. §§ 14 64(d)(15), 1730(r)(4), 3201(4) and 36 U.S.C. § 343] demonstrated the congressional intent to exclude "Honorary Counsels" from the jurisdictional grant of 28 U.S.C. § 1351(1)].  See also *Dunlop v. First Nat. Bank of Arizona*, 399 F.Supp. 855, 856 (D. Ariz. 1975).

[45]  *California Coastal Comm'nv Quanta Inv. Corp.*, (1980)113 Cal.App.3d, 579, 599.

–11–                                                                                          80723/5021.01

(EJL)"[46] as a comprehensive, integrated, codified scheme for the enforcement of money judgments which includes the creation of various types of liens to aid in such enforcement.[47]  One of the liens in that array of remedies is the judicial lien on personal property created by C.C.P. §697.530.  Subparagraph (a) of that section identifies the types of property as to which such a lien can apply.  Immediately thereafter subparagraph (b) provides as follows:

> (b) If any interest in personal property on which a judgment lien could be created under subdivision (a) is **acquired after the judgment lien was created**, the judgment lien attaches to the interest at the time it is acquired. (Emphasis added.)

Thus by comparing and contrasting the judicial lien of §697.530 to the analogous provisions in §§708.110 and 708.120, what is noticeably missing from the ORAP lien are any after acquired property entitlement to serve as the analogue to § 697.530(b).  That being the case, this familiar canon of statutory construction specifically embraced and endorsed by the Ninth Circuit in a remarkably similar context prohibits the court from "*reading into*" the ORAP lien provisions any "*after acquired property*" provisions which, in the context of ORAP liens, the legislature conspicuously elected to omit.

### 5.    *Whatever General ORAP Lien May Have Once Existed Has Now Lapsed.*

Whatever property Proulx's general ORAP lien may have once applied to is now extinguished with the passage of time.  Proulx's argument that the Trustee may not avoid the ORAP lien because it was perfected more than 90 days prior to the preference period is an exercise in misdirection.  It overlooks the fact that the ORAP lien automatically lapsed on November 20, 1999 because Proulx never took the requisite action to extend the life of that lien.[48]  As a result, the ORAP lien no longer exists and therefore may not be used to elevate Proulx's unsecured claim to "secured" status.

As the Ninth Circuit cautioned in *In re Hilde*, courts may not add provisions or requirements into California Code of Civil Procedure § 708.110 which the legislature did not see fit to include.[49]  Rather, bankruptcy courts must honor the intent of the California legislature and analyze the statute in question in light

---

[46]  Cal C.C.P. §§ 680.010 et seq.

[47]  *In re Hilde, supra* at p. 952-953.

[48]  Cal. Civ. Proc. § 708.110(d) (an ORAP lien will automatically lapse after one year "unless extended or sooner terminated by the court").

[49]  *In re Hilde*, 120 F.3d 950, 954 (9th Cir. 1997); *see generally*, *U.S. v. Kakatin*, 214 F.3d 1049, 1051 (9th Cir. 2000), *cert. denied*, 531 U.S. 911 (2000) (as a general rule of statutory construction, "the inclusion of certain provisions in a statute implies the exclusion of others").

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9085

80723/5021.01

of the entire relevant statutory scheme.[50]   This concept is relevant here because Section 708.110(d) specifically provides that an ORAP lien will only exist for one year unless it is extended or extinguished early. Significantly, the legislature did not include any tolling provisions in the statute.

When the California legislature intends for a bankruptcy filing to toll a legislatively created lien — such as the "secret" ORAP lien — then it specifically provides for such tolling in its statutory enactments. For example, prior to 1997, California Commercial Code § 9403 specifically provided in subdivision (2) that a bankruptcy filing would toll the five year period that a UCC-1 financing statement remained effective.  In 1997, the legislature deleted this tolling provision, and the current version of subdivision (2) clearly states that a financing statement will automatically lapse after five years "unless a continuation statement is filed prior to the lapse."[51]   Similarly, California Code of Civil Procedure § 708.110 clearly states that an ORAP lien will automatically lapse after one year "unless extended or sooner terminated by the court."[52]   Here, since Proulx's lien was created on November 20, 1998, and no action — which includes filing of relief from the automatic stay under § 362(d)(1)[53] to so extend — was taken to extend the general lien rights — whatever they were.[54]   Hence, the general lien automatically lapsed on November 20, 1999.  Under the scheme created by the California legislature.  Because it is this court's duty to *"apply California's lien statutes according to their plan language,"*[55] it must hold that any ORAP lien created in 1999 has now lapsed and unenforceable.

**C.**   **Proulx has no Valid or Enforceable Judicial Lien.**

**1.**   ***Proulx's Judicial Lien Did Not Apply or Attach to the Disputed Fund.***

California C.C.P. § 697.530 establishes the types of property in which a judicial lien can be created. Subsection (a) provides as follows:

---

[50]   *In re Hilde*, *supra*, at 954.

[51]   Cal. Comm. Code § 9403(2).

[52]   Cal. Civ. Proc. § 708.110(d).

[53]   The "*cause*" being the risk of lapse.

[54]   One could also infer that no effort to extend was ever undertaken because in fact Proulx recognized that he had no ORAP Lien on the Disputed Fund because he realized that it was in Third Party hands, and he never complied with § 708.120 to create a Third Party ORAP Lien. Happily, this action is necessarily resolved against Proulx before it becomes necessary to weigh that inference against others that might be advanced.

[55]   *Hilde*, *supra* at p. 956.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

80723/5021.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

A judgment lien on personal property is a lien on all interests in the following personal property that are subject to enforcement of the money judgment against the judgment debtor pursuant to Article 1 (commencing with Section 695.010) of Chapter 1 at the time the lien is created if a security interest in the property could be perfected under the Commercial Code by filing a financing statement at that time with the Secretary of State:

> (1) Accounts receivable.
> (2) Chattel paper.
> (3) Equipment.
> (4) Farm products.
> (5) Inventory.
> (6) Negotiable documents of title.

The only category listed above which arguably could include the Debtor's right to receive the Disputed Fund is "accounts receivable." But that argument would fail because C.C.P. § 680.130 — which defines accounts[56] receivable — incorporates by reference the California Commercial Code for the definition of "accounts." Commercial Code Section 9106 defines them as follows:

> "Account" means any *right to payment for goods sold or leased or for services rendered* which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance. "General intangibles" means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, investment property, rights to proceeds of written letters of credit, and money. All rights to payment earned or unearned under a charter or other contract involving the use of hire of a vessel and all rights incident to the charter or contract are accounts. (Emphasis added.)[57]

The Debtor's right to receive the Disputed Fund under the Settlement Agreement was clearly not a "right to payment for goods sold or leased or for services rendered", and is therefore not property in which a judicial lien can be created under C.C.P. § 697.510. While it may fit the definition of a "General Intangible," general intangibles are not subject to a judgment lien. Like his other theories supporting his

---

[56] C.C.P. § 697.530(a).

[57] This section of the California Commercial Code was amended effective July 1, 2001, to provide as follows: "Account", except as used in "account for," means a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of state, or person licensed or authorized to operate the game by a state or governmental unit of a state. The term includes health care insurance receivables. The term does not include (i) rights to payment evidenced by chattel paper or an instrument, (ii) commercial tort claims, (iii) deposit accounts, (iv) investment property, (v) letter-of-credit rights or letter of credit, or (vi) rights to payment for money or funds advanced or sold, other than rights arising out of the use of a credit or charge card or information contained on or for use with the card.

For this Court's purposes in evaluating the definition of the term "account" as required by this Motion, the two definitions are functionally identical.

80723/5021.01

1    secured claim, this one fails and must be disregarded.

2    **2.    *The Judicial Lien Never Attached to the Qui Tam Funds Because They Were in the***

3    ***Custody of the Court at the Time Proulx Attempted to Create the Lien.***

4    Problems with the Judicial Lien theory are more than definitional.  On February 22, 1999, this Court

5    entered its "Order Authorizing Payment" (the "Payment Order") which provided as follows:

6    IT IS HEREBY ORDERED that the UNITED STATES OF AMERICA
     shall immediately pay any and all monies currently due and owing to Debtor
7    SARA NEWSOME BURNS directly to Debtor's counsel, Robbins &
     Keehn, at 530 "B" Street, Suite 2400, San Diego, CA 92101, c/o Charles
8    F. Robbins, Esq.

9    IT IS FURTHER ORDERED that the UNITED STATES OF AMERICA
     is then deemed to have discharged all of its obligations under the subject
10   settlement and is, therefore, released from any further liability against all
     parties in this action, including but not limited to Debtor SARA
11   NEWSOME BURNS, Creditor Bradley Proulx, and their counsel.

12   IT IS FURTHER HEREBY ORDERED that Debtor's counsel, Charles F.
     Robbins, Esq., and his firm, Robbins & Keehn, are hereby instructed to
13   place the funds from the United States of America into a segregated,
     interest-bearing account.  **The funds may not be discharged without**
14   **further order of this court.  Further, in the event the Debtor**
     **dismisses her Chapter 13 action, the funds shall remain in the**
15   **account of Debtor's counsel, pending further order of this court**.
     (Emphasis added.)

16
17   In issuing its Payment Order, this Court made it clear that Robbins & Keehn was to hold the

18   Disputed Fund for the benefit, and under the control, of the Court.  Indeed, this Court's control of these

19   funds was to survive even if the Debtor's Chapter 13 case was dismissed.

20   For this reason, Proulx's alleged security interest in the Disputed Fund is without merit and must be

21   disregarded.

22   **3.    *Even If Proulx had a Valid Judicial Lien, It is Voidable as a Preference Under 11 U.S.C.***

23   ***§ 544.***

24   If he had a valid Judicial Lien, it is voidable as a preference.  In his Motion, Proulx asserts that "the

25   State Court order/judgment created a judicial lien"[58].  What Proulx fails to mention is the statutory authority

26   for this assertion.  A judicial lien is created pursuant to C.C.P. § 697.510(a), which provides as follows:

27   (a) *A judgment lien on personal property* described in Section 697.530
     *is created by filing a notice of judgment lien in the office of the*
     *Secretary of State* pursuant to this article.  A judgment lien may be created
28   under this article only if the judgment is a money judgment that was first
     entered in this state after June 30, 1983.  Except as provided in subdivision

[58] Motion, page 6, line 2.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

80723/5021.01

(b) of Section 697.540, a judgment lien may not be created under this article if the money judgment is payable in installments unless all of the installments under the judgment have become due and payable at the time the notice of judgment lien is filed. (Emphasis added.)

While it is true that the State Court Judgment was issued on October 30, 1998, Proulx did not file a notice of that judgment with the Secretary of State until August 2, 1999,[59] just 11 days before the Debtors filed their Chapter 7 petition. Accordingly, the judicial lien is clearly within the 90 day preference period designated by 11 U.S.C. § 547. Liens created within the preference period are voidable under the "strong arm" provisions of 11 U.S.C. § 544. Accordingly, Proulx's assertion that he has a duly perfected security interest in the Qui Tam Funds is without merit.

**D.    Proulx Has No "So Called Levy" Lien Because The Turnover Order by Itself Did Not Create an Execution Lien and Proulx Never Levied on Burn's Entitlement to Any Proceeds under the Settlement Agreement.**

Defendant correctly points out that an execution lien is created by *a levy* under a writ of execution.[60] However, there was no levy in this case, only a turnover order issued pursuant to C.C.P. § 699.040. A turnover order is not a substitute for a levy; it merely assists a judgment creditor who seeks to levy on property. It does not, in and of itself, create an execution lien. Because Proulx never properly levied on Burns' entitlement to the Disputed Fund proceeds under the settlement agreement, an execution lien was never created.

Enforcement of judgment statutes are subject to strict construction because they are purely a creation of the Legislature.[61] There are very specific requirements for a levy on personal property and those requirements are completely distinct from the turnover order requirements. In order to levy on Burns' right to future payment under the settlement agreement, Proulx had to strictly comply with Section 700.170, which he failed to do.

Section 700.170 defines the method of levy for an account receivable or general intangible. Burns' future "*right to payment*" under the settlement agreement was a general intangible which was defined by C.C.P. § 680.210 (version which was operative until July 1, 2001). C.C.P. § 680.210 incorporated § 9106

---

[59] See Request for Judicial Notice Exhibit "G."

[60] C.C.P. § 697.710.

[61] See e.g. *Epstein v. Abrams* (1997) 57 Cal.App.4th 1159, 1165 & 1168.

–16–

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

80723/5021.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

of the California Commercial Code and included rights to payment.  C.C.P.§ 680.210 stated: "*General intangibles' means 'general intangibles', as defined in Section 9106 of the Commercial Code, consisting of rights to payment.*" Section 9106 defines a "general intangible" as: "*any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, investment property, right to proceeds of written letter so credit and money.*"  Because Proulx sought to levy on Burns' *right to payment* under the settlement agreement in the medicare fraud case, he had to comply with C.C.P. § 700.170.  Not only is there no evidence that he ever did that, Proulx does not espouse any facts from which such compliance could be shown.

Section 700.170 makes it clear that a "*levy*" does not occur until a copy of the notice of levy and the writ of execution is served on the person who is obligated to make the payment to the debtor — in this case, the United States of America.[62]  The United States was obligated to pay Burns a portion of its recovery from the settlement in the medicare fraud action for her role as the "*whistle blower*" on the defendants in that case.  Here, it is undisputed that Proulx never served the United States with either a notice of levy or writ of execution.[63]

Section 700.170 of the C.C.P. specifically provides:

(a)      Unless another method of levy is provided by this article, to levy upon an account receivable or general intangible, the levying officer shall personally serve a copy of the writ of execution and a notice of levy on the account debtor.

(b)      If a levy is made under subdivision (a) and payments on the account receivable or general intangible are made to a person other than the judgment debtor (whether pursuant to a security agreement, assignment for collection, or otherwise), the levying officer shall, if so instructed by the judgment creditor, personally serve a copy of the writ of execution and a notice of levy on such third person. Service of the copy of the writ and notice of levy on such third person is a levy on any amounts owed to the judgment debtor by such third person.

Section 680.120 of the C.C.P., which incorporates § 9105 of the Commercial Code provides that an "*Account debtor*" means '*the person who is obligated on an account, chattel paper or general intangible.*"  Here, the account debtor was the United States.[64]  Because it is undisputed that the United States was never served with a copy of the notice of levy or writ of execution, no levy on Burns' right to that payment occurred.  Without a proper levy, no execution lien arose.

---

[62] C.C.P. §§ 700.170 and 680.120; California Commercial Code § 9105.

[63] See Part II above.

[64] See Request for Judicial Notice E (Payment Order) and LSK Declaration, Exhibit A.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 'B' STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1    The only document Proulx relies on to demonstrate an "*execution lien*" is the turnover order issued

2  under § 699.040.  This section specifically states that a turnover order can be served in conjunction with a

3  levy, but nowhere does the section state that it can abrogate or be a substitute for the levy process.  For

4  example, section 699.040(a)(2) specifically states, "*An order pursuant to this paragraph may be served*

5  *when the property or debt is levied upon or thereafter*."  The language is unambiguous — a proper levy

6  must occur in conjunction with the turnover order.  Because a turnover order cannot be a substitute for a

7  levy, Proulx must prove that a proper levy occurred before he can show that an execution lien ever arose.

8    Further, section 699.040 is not a part of the "Methods of Levy" article — Article 4 of the

9  Enforcement of Judgments Title (Title 9) of Part 2 of the California Code of Civil Procedure.  Section

10  699.040 is part of "Article 1 - General Provisions" of Title 9.  Turnover orders issued under § 699.040

11  provide *assistance* to judgment creditors who have already levied, or are attempting to levy on property by

12  creating a court mandate which, if not followed, will subject the party served to "*arrest and punishment for*

13  *contempt of court*."  Thus the Turnover Order is only intended to create a sanction for noncompliance, not

14  a levy from which a lien arises.  Section 699.040 immediately follows § 699.030 which provides for the

15  manner in which a levying officer should attempt to levy on property.  Section 699.030 concludes with the

16  statement that if seizure of the property involves "a substantial risk of death or serious bodily injury" then the

17  levying officer shall promptly return to the court and "[i]n such a case, the court shall make such orders as

18  may be appropriate."

19    Section 699.040 immediately follows.  This section — upon which Proulx relies — provides that the

20  court may issue a turnover order to the judgment debtor for the "*property sought to be levied upon*."  If

21  the person served with the turnover order does not comply, he or she may be arrested and punished for

22  contempt of court.  The purpose of the turnover order is to assist the levying officer in obtaining the property

23  by creating a specific consequence for a recalcitrant judgment debtor[65] who tries to frustrate the levy by

24  hiding assets or creating a serious risk of harm to the levying officer.  No such circumstances are even alleged

25  to have occurred here — that is not disputed.  And even if they did, the Turnover Order still does not create

26  a lien.

27    In any case, a judgment creditor cannot obtain the benefits of an execution lien without complying

28  with the requirements for a valid levy, by simply obtaining a turnover order.  There is absolutely no authority

---

[65] Section 699.04 for turnover orders only applies to "judgment debtors," not third parties.  Because Burns never had possession of the final payment under the settlement agreement the turnover order never even became operational.

–18–

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

1    for replacing the specific levy statutes with the turnover statutes.  Fundamental maxims of statutory

2    construction require that a specific statutory section qualifies a more general section and will govern, even

3    thought the general provisions, standing alone, would encompass the same subject.[66]

4        Finally, in those specific instances where the California legislature meant to create a lien by mere

5    service of an order or pleading, it has expressly said so.  See e.g. C.C.P. § 708.110 ("***Service of the order***

6    ***creates a lien*** on the personal property of the judgment debtor....") and § 708.250 ("***Service of summons***

7    ***on the third person creates a lien*** on the interest of the judgment debtor in the property or on the debt

8    owed to the judgment debtor that is the subject of an action under this article.").  No such language is found

9    in the turnover order statute of § 699.040.  As previously indicated, enforcement of judgment statutes are

10   strictly construed, and the absence of such language from § 699.040 therefore indicates the Legislature did

11   not intend that service of a turnover order under that section to create a lien.

12       Simply put, without a levy, there was no execution lien.[67]  The undisputed facts demonstrate that no

13   levy was ever made.  Hence Proulx has no "execution lien" or "levy lien."

14   **E.    PROULX HAS NO "LIEN ON PENDING ACTION."**

15       This is Proulx's most troubling argument — troubling because of what has been "edited out" of the

16   record.  Proulx argues that he has a lien on the Disputed Fund as a result of filing his Notice of Lien with the

17   Federal District Court on January 13, 1999, pursuant to C.C.P. § 708.410.  What he does not *tell the*

18   *Court* is that when he filed his notice, *the case had been dismissed, with prejudice, for over two and a*

19   *half years.*[68]  Subsection (d) of that section defines the term "pending action" as follows:

20       For the purpose of this article, an action or special proceeding is pending **until the time for**
**appeal from the judgment had expired or, if an appeal is filed, until the appeal has**

21   **been finally determined.** (Emphasis added.)

22       By any measure it is clear that the Federal Action was not a "*pending action*" at the time Proulx filed

23   his Notice of Lien.  Like all of his other arguments, once the facts are fully disclosed, his assertion that his

24   claim is secured is exposed as mistaken and devoid of merit.

25

26   _____

27       [66]  Trustees of Amalgamated Insurance Fund v. Geltman Industries, Inc., 784 F.2d 926, 930 (9th Cir. 1986)[citing Monte Vista Lodge v. Guardian Life Ins. Co. of America, 384 F.2d 126, 129 (9th Cir. 1967)].  See also Part III(B)(2) above.

28       [67]  See e.g. *Grover v. Bay View Bank*, 87 Cal.App.4th 452, 459 (discussing validity of levy as opposed to existence of levy) [citing Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2000) ¶ 6:422, p. 6D-27 (***no lien is created until all acts necessary to levy on the property are completed***)].

    [68]  See the Request for Judicial Notice, Exhibit A (Federal Action Docket) at Docket Item 132.

80723/5021.01

IV.    **CONCLUSION.**

This is a case where as to all material facts and circumstances are undisputed. The Parties agree on what did and did not happen. The legal consequences of actions taken or omitted are the subject of lively debate, however, that controversy is resolved by applying applicable legal principles to the undisputed facts.

Although it is clear that over the course of time Proulx engaged in a variety of conduct from which he clearly intended to achieve the benefits of some sort of lien or secured claim, what is equally clear is that each effort was unsuccessful. The lien rights claimed are all the creation of specific legislative enactments and require strict compliance. That compliance was not achieved. Although C.C.P. Section 708.120 created a device through which the desired lien could have been created, that was the one avenue of enforcement that was never undertaken. The provident or improvident nature of that omission depends upon which side of the controversy one's interest lies. However, the legal consequences of the omission are subject to no such variance. No lien was created in the Disputed Fund while it was in the hands of "Third Parties" — which now include the Trustee Plaintiff. There is no theory upon which Proulx's lien claims can be sustained. The Trustee is entitled to Judgment as a matter of law. Accordingly, Proulx's Motion for Summary Judgment should be denied, and an Order granting Summary Judgment to the Trustee based upon this uncontroverted record should be entered.

Dated: December 5, 2001

**ROBBINS & KEEHN**
A Professional Corporation

By:    /s/ L. Scott Keehn
L. Scott Keehn
Lynn M. Beekman
Special Counsel for
**RICHARD KIPPERMAN, CHAPTER 7 TRUSTEE**

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

80723/5021.01